UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY MARTIGNAGO, RHONDA
DEENEY, AMY FERGUSON, CINDY
SELLERS, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

          - against -

MERRILL LYNCH & CO., INC., MERRILL
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, and BANK OF
AMERICA CORPORATION,

                    Defendants.

**MEMORANDUM OPINION AND
ORDER**

11 Civ. 3923 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Defendants have moved to transfer this Fair Labor Standards Act ("FLSA") case

to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  For the reasons stated below,

Defendants' motion will be DENIED.

**BACKGROUND**

          Plaintiff Nancy Martignago filed this action on June 9, 2011, on behalf of herself

and all others similarly situated alleging that Defendants violated the FLSA, 29 U.S.C. § 201 et

seq., by failing to pay overtime wages and certain benefits.  (Cmplt. ¶ 1)  The putative class

consists of Client Associates ("CAs") who were employed by Defendants at their retail branch

office locations nationwide.  (Id. ¶ 2)  Martignago has worked for Merrill Lynch, Pierce, Fenner

& Smith Inc. ("Merrill Lynch") since 1985 and currently is employed as a CA in the firm's Fort

Worth, Texas branch office.  (Id. ¶ 6)  Defendant Merrill Lynch – which, until January 1, 2009,

was a wholly owned subsidiary of Defendant Merrill Lynch & Co., Inc., a financial services

holding company – is a registered broker dealer and investment advisor.  (Id. ¶ 7)  Defendant

Bank of America, a financial services company, acquired Merrill Lynch on January 1, 2009.  (Id.

¶¶ 8-9)  Merrill Lynch & Co., Inc. and all of its subsidiaries are now wholly owned subsidiaries

of Bank of America.  (Id. ¶ 9)

 On August 25, 2011, Martignago filed an Amended Complaint.  (Dkt. No. 24)

The Amended Complaint names Rhonda Deeney[1], Amy Ferguson, and Cindy Sellers as

additional named plaintiffs.  (Am. Cmplt. ¶¶ 9-12)  Ferguson worked as a CA in Naples, Florida

branch offices from December 1999 until April 2011.  (Id. ¶ 11)  Sellers currently is employed as

a CA in a Seattle, Washington branch office, but previously worked as a CA in Naples, Florida

and Bridgewater, New Jersey.  (Id. ¶ 12)  Several other CAs have filed consents to become party

plaintiffs.  (Dkt. Nos. 22, 23, 30, 35)

 CAs are assigned to work for Merrill Lynch Financial Advisors ("FAs") who

provide retail brokerage services to their clients.  (Am. Cmplt. ¶ 23)  CAs "provide . . .

administrative and sales assistance to FAs, which help[s] FAs meet compliance requirements,

operate efficient[ly] . . . and properly service clients and grow their business and client bases."

(Id.)  All CAs in Merrill Lynch branch offices allegedly perform essentially the same job

functions and are subject to the same compensation policies and practices.  (Id. ¶¶ 26-27)

 CA income has two components:  (1) a salary paid by Merrill Lynch; and (2)

"supplemental compensation" paid from the commissions of the FAs to whom CAs are assigned

as set forth in written agreements among the CA, FA, and Merrill Lynch.  (Id. ¶¶ 28, 31-32)  The

FAs set supplemental compensation for CAs, but Merrill Lynch must review and approve CA

supplemental compensation.  (Id. ¶ 31)  Merrill Lynch also administers the payment of

---

[1]  On September 28, 2011, Deeney voluntarily dismissed her claim.  (Dkt. No. 33)

supplemental compensation, which constitutes a significant percentage of CAs' compensation.

(<u>Id.</u> ¶¶ 29, 31)

Plaintiffs allege that overtime pay is calculated on their base salaries rather than on their total compensation – including supplemental compensation – in violation of the FLSA. (<u>Id.</u> ¶ 33)  Plaintiffs contend that Defendants' alleged FLSA violations have occurred pursuant to corporate policies imposed nationwide:

> Through its corporate policies and practices that divert certain supervisory and compensation decisions regarding CAs to its FA workforce, Merrill Lynch has created a work and pay structure for CAs that results in a pattern of FLSA violations, including the failure to maintain proper employment compensation records and the failure to pay lawful overtime for hours CAs are required to work.

(<u>Id.</u> ¶ 99; <u>see also</u> ¶ 34)  Plaintiffs further assert that Merrill Lynch managers frequently refuse to authorize overtime work by CAs, even where CAs are required to work overtime by their supervising FAs, resulting in a denial of overtime pay in violation of the FLSA.  (<u>Id.</u> ¶ 35) Plaintiffs maintain that Merrill Lynch is "well aware" that many CAs, "out of fear of angering their FAs or disturbing their compensation arrangements with the FAs, do not refuse to work the overtime hours requested or required by their FAs, nor do they raise overtime issues with or ask to be paid overtime by their FAs."  (<u>Id.</u> ¶ 36)

Merrill Lynch's corporate headquarters and principal place of business is located in the Southern District of New York.  (<u>Id.</u> ¶ 7)  Plaintiffs allege that if the collective action is certified, "it will include class members and party plaintiffs who work for Merrill Lynch across the country, the greatest concentration of whom worked and/or resided in New York."  (<u>Id.</u> ¶ 8) Bank of America is incorporated in Delaware and headquartered in North Carolina.  (<u>Id.</u> ¶ 14)

On August 12, 2011, Defendants filed a motion to transfer this action to the Northern District of Texas.  (Dkt. No. 13)  Plaintiffs oppose the motion.

## DISCUSSION

### I.    LEGAL STANDARD

Defendants' transfer motion is founded on 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The purpose of § 1404(a) is 'to prevent waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806(DC), 2003 WL 21087953, at *2 (S.D.N.Y. May 12, 2003) (quoting Trehern v. OMI Corp., No. 98 Civ. 0242(RWS), 1999 WL 47303, at *1 (S.D.N.Y.  Feb. 1, 1999) (internal quotations omitted)).

"A court performs a two-part inquiry to determine whether transfer is appropriate. First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court."  In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (citing 28 U.S.C. § 1404(a); In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998)).  Second, "the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice."  Id. (citing In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d at 400; Lewis v. C.R.I., Inc., No. 03 Civ. 651(MBM), 2003 WL 1900859, at *2 (S.D.N.Y. Apr. 17, 2003)).  The parties do not dispute that this action could have been brought in the Northern District of Texas, but they disagree as to whether transfer would promote the interests of justice and the convenience of the parties and witnesses.

Under § 1404, the party seeking transfer has the burden of demonstrating that transfer is appropriate.  See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d

102, 114 (2d Cir. 2010) ("[T]he party requesting transfer [under § 1404(a)] carries the 'burden of making out a strong case for transfer.'") (quoting Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989)).  "A motion to transfer pursuant to 1404(a) rests within the 'sound discretion' of the district court."  Montgomery v. Tap Enters., Inc., No. 06 CV 5799(HB), 2007 WL 576128, at *2 (S.D.N.Y. Feb. 26, 2007) (quoting Schwartz v. R.H. Macy's, Inc., 791 F. Supp. 94, 94 (S.D.N.Y. 1992)).  "In making this determination, the Court has 'considerable discretion in adjudicating a motion for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"  Williams v. City of New York, No. 03 Civ. 5342(RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)).

## II.   ANALYSIS

### A.   This Action "Might Have Been Brought" in the Northern District of Texas

"'The threshold question in a transfer motion [under § 1404(a)] is whether the action could have been brought in the district to which transfer is proposed.'"  Freeman v. Hoffman-La Roche, Inc., No. 06 Civ. 13497(RMB)(RLE), 2007 WL 895282, at *2 (S.D.N.Y. Mar. 21, 2007) (quoting Arrow Elecs., Inc. v. Ducommun, Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1989)).

Plaintiffs do not dispute, and the Court finds, that this action "might have been brought" in the Northern District of Texas.  A lawsuit claiming violations of the FLSA "may be maintained against any employer . . . in any Federal . . . Court of Competent Jurisdiction."  29 U.S.C. § 216.  The question of where venue is proper is governed by 28 U.S.C. § 1391(b), which provides in relevant part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial

district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

It is undisputed that a substantial part of the events giving rise to Martignago's claims occurred in the Northern District of Texas, at Merrill Lynch's Fort Worth office.  Accordingly, the Northern District of Texas is a proper venue under § 1391(b)(2).

### B.    Consideration of Factors

In ruling on motions to transfer, district courts consider the following factors:

(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) (citing

Pilates v. Pilates Inst., 891 F. Supp. 175, 183 (S.D.N.Y. 1995); Amersham Pharmacia Biotech,

Inc. v. Perkin-Elmer Corp., 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998)).  The Court will consider

each of the factors seriatim.

### 1.    Plaintiffs' Choice of Forum

As a general matter, "[a] plaintiff's choice of forum 'is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.'"

Hershman v. UnumProvident Corp., 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2007) (quoting Royal

& Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001)); see also DiRienzo

v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002) ("Ordinarily a strong favorable

presumption is applied to [plaintiff's choice of forum].") (citing <u>Murray v. British Broad. Corp.</u>, 81 F.3d 287, 290 (2d Cir. 1996)).

Where a plaintiff files suit outside of her home district, however, her choice of forum may be accorded less deference:

> [t]he Second Circuit has clarified the amount of deference to which a plaintiff is entitled when he files a lawsuit outside of his home forum:  the more such a decision is "dictated by reasons that the law recognizes as valid, the greater the deference that will be given to" it; the more it appears the decision is "motivated by forum shopping reasons," the less deference will be accorded to it.

<u>Hershman</u>, 658 F. Supp. 2d at 601 (quoting <u>Iragorri v. United Technologies Corp.</u>, 274 F.3d 65, 73 (2d Cir. 2001)).

Because Martignago does not reside in this District, her decision to file suit here will be afforded a lesser degree of deference.[2]  <u>See</u> <u>Amick v. Am. Express Travel Related Servs. Co., Inc.</u>, No. 09 Civ. 9780(AKH), 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010) ("Amick's decision to bring this action in the Southern District of New York is accorded a lesser degree of deference because he is not a resident of the Southern District of New York and the instant action is 'minimally connected with [this District]'") (quoting <u>Abney v. Gen. Elec. Co.</u>, No. 08 Civ. 7344(WHP), 2009 WL 1181300 (S.D.N.Y. May 4, 2009) (quoting <u>Pierce v. Coughlin</u>, 806 F. Supp. 426, 429 (S.D.N.Y. 1992))).

Moreover, because Martignago seeks to represent a class of CAs working in Merrill Lynch branch offices located throughout the United States, her choice of forum is a "less significant consideration." <u>Warrick v. Gen. Elec. Co.</u>, 70 F.3d 736, 741 n.7 (2d Cir. 1995); <u>see</u>

---

[2]  Martignago argues that Caterina Derkasch, one of the individuals who filed a consent to become a party plaintiff (Dkt. No. 30), worked for Merrill Lynch in New York and, therefore, Martignago's decision to pursue her claims in this District is entitled to deference.  Derkasch apparently worked for Merrill Lynch in its Garden City, New York office, however, which is located in the Eastern District of New York, not the Southern District.  (Def. Supp. Reply Br. 3)

also Adeva v. Intertek USA Inc., No. 04-CV-6937(RJD), 2009 U.S. Dist. LEXIS 18161, at *7 (E.D.N.Y Mar 10, 2009) ("a plaintiff who sues as a class representative . . . is entitled to less deference in her choice of forum").

Nevertheless, "some deference is due and, competing against Defendants' preference, [Martignago's] preference prevails." Tahir v. Avis Budget Group, Inc., No. 09-3495(SRC), 2009 WL 4911941, at *4 (D.N.J. Dec. 14, 2009).  In sum, this factor weighs in Plaintiffs' favor, but with significantly less force than if Martignago or another plaintiff resided in this District.

### 2.    Convenience of Witnesses

"The convenience of the forum for witnesses 'is probably . . . the single most important factor in the analysis of whether a transfer should be granted.'" Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (quoting Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004)).  The Court must consider the convenience of both party and non-party witnesses.  Montgomery, 2007 WL 576128, at *3 ("'[t]he convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue'") (quoting AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004)).[3]

"When weighing this factor, courts must consider the materiality, nature, and quality of each witness, in addition to the mere number of witnesses in each district." Beatie &

---

[3] Some courts have ruled that "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses," Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (citing Royal & Sunalliance, 167 F. Supp. 2d at 577 (citing Nieves v. Am. Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988))), while others have not distinguished between party and non-party witnesses.  Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) ("[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted").

Osborn LLP, 431 F. Supp. 2d at 396 (citing Houlihan Lokey Howard & Zukin Capital, Inc. v. The Protective Group, Inc., No. 05 Civ. 4741(DC), 2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005) (citing Royal & Sunalliance, 167 F. Supp. 2d at 577)); see also Rindfleisch v. Gentiva Health Sys., Inc., 752 F. Supp. 2d 246, 254 n.6 (E.D.N.Y. Oct. 8, 2010) (quoting AIG Fin. Prods. Corp. v. Pub. Utility Dist. No. 1 of Snohomish Cnty., 675 F. Supp. 2d 354, 369 (S.D.N.Y. 2009) ("the duty of the court is 'not merely [to] tally the number of witnesses' on each side and in each forum, but instead is to 'qualitatively evaluate the materiality of the testimony that the witnesses may provide.'") (internal quotation marks and citations omitted)). "'[I]t is the nature of the testimony and not the number of prospective witnesses on each side that is important' when assessing the convenience of potential witnesses." Id. at 255 (quoting Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc., Nos. 07 Civ. 975(HB), 07 Civ. 1229(HB), 07 Civ. 1777(HB), 07 Civ. 1953(HB), 2007 WL 2068107, at *4 (S.D.N.Y. July 20, 2007) (internal quotation marks and citation omitted)).

"The moving party must specify the witnesses to be called and provide general information as to what their testimony will cover." Age Group Ltd. v. Regal Logistics, Corp., No. 06 Civ. 4328(PKL), 2007 WL 2274024, at *4 (S.D.N.Y. Aug. 8, 2007) (citing Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), abrogated on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 581 (2d Cir. 1990)).

Here, Defendants have identified as witnesses several of Martignago's co-workers and managers in Merrill Lynch's Fort Worth and Southlake, Texas offices. (Def. Br. 10-11) Defendants argue that "Plaintiff's claim alleges violations of the FLSA occurring in Texas, and must hinge on the testimony of current and former Merrill Lynch employees in Texas. . . . All of the witnesses regarding these claims . . . are located in Texas (or close to Texas)." (Id.) "[I]t

will be highly disruptive and expensive for these witnesses to be required to travel to New York in order to testify in the trial of this matter."  (Id. at 12)

Based on the allegations of the Amended Complaint, however, it appears that the most material testimony is likely to come from witnesses based at Merrill Lynch's New York headquarters.  According to Plaintiff, the alleged FLSA violations are the product of a compensation and supervisory structure mandated in New York and implemented nationwide. That structure "divert[s] certain supervisory and pay decisions regarding [Merrill Lynch] CA employees to other employees, Financial Advisors, but require[s] Merrill Lynch management approval before paying CAs for overtime work."  (Am. Cmplt. ¶ 2)  According to Plaintiffs, this structure results in a "pattern where CAs are required to work overtime hours but Merrill Lynch does not properly record such hours and does not properly calculate or compensate its CA workforce based on the overtime they are required to work."[4]  (Id.)

Where a plaintiff asserts – on behalf of herself and a nationwide collective class – FLSA violations flowing from a corporate policy mandating an allegedly unlawful compensation scheme, courts generally conclude that the "more critical and extensive [testimony] is likely to be provided by the parties and witnesses residing . . . where [the company] is headquartered and [where the] executives who set company-wide policies are based."  Rindfleisch, 752 F. Supp.2d at 256; see also Earley v. BJ's Wholesale Club, Inc., No. 06 Civ. 3529(WHP), 2007 WL 1624757, at *2-*3 (S.D.N.Y. June 4, 2007) ("Plaintiff alleges a corporate policy of denying

---

[4] Defendants contend that Merrill Lynch's policy is that supplemental compensation should be included in calculating overtime compensation for CAs.  (Def. Reply Br. 2; Giza Decl., Ex. 1) Plaintiffs' claim is not limited to Merrill Lynch's written policy, however.  Instead, Plaintiffs contend that a CA/FA supervisory and payment structure was created at Merrill Lynch's New York headquarters that, when implemented in the field, has led to FLSA violations.  (Am. Cmplt. ¶ 3, 4)  Defendants do not dispute that the policies governing CA compensation and the CA/FA payment structure were developed in New York.

overtime pay to employees throughout the United States.  Although there has not yet been any discovery on this issue, it is likely that Defendant's national overtime policies were determined at its headquarters in Massachusetts.  Moreover, it is undisputed that many of the documents and executives relevant to discovery are located in Massachusetts. . . . Because Plaintiff's claims focus on the nature and implementation of Defendant's company-wide overtime policies and not those of the Pennsylvania store [where plaintiff worked] in particular, it is likely that most discovery will take place at [Defendant's] headquarters in Massachusetts.  Accordingly, this factor weighs in favor of transfer to Massachusetts."); Waldmer v. SER Solutions, Inc., No. 05–cv–2098 (JAR), 2006 WL 314346, at *5 (D. Kan. Feb. 3, 2006) ("Although [defendant] regularly conducts business in Kansas, and a majority of the plaintiffs have done some work for [defendant] in Kansas in the past three years, the logical origin of this dispute is Virginia.  It was at the company's headquarters in Virginia that [defendant's] personnel made and implemented the decision to treat plaintiffs as exempt under the FLSA.  No company policies were ever established in Kansas.").

Here, as in Rindfleisch, the critical testimony will not concern "day-to-day operations of [specific] branches . . . or the implementation of the [allegedly unlawful compensation] system within [a particular] region.  Plaintiff's case . . . does not focus on the operations of specific branches within a particular region, but instead is based upon the allegation that [the] defendant . . . has a 'corporate policy' of paying certain types of workers under an allegedly unlawful . . . compensation scheme."  Rindfleisch, 752 F. Supp.2d at 255-56.  Under such circumstances, the most material witnesses are likely to be those at company headquarters who were responsible for formulating, interpreting, and enforcing company-wide compensation policies.  Id.; see also Tahir, 2009 WL 4911941, at *6 ("witnesses such as . . .

officers and employees with relevant information about the company's . . . compensation decisions will be found . . . where the company is headquartered"); Farrior v. George Weston Bakeries Distrib., Inc., No. 08-CV-2705, 2009 WL 113774, at *4 (E.D.N.Y. Jan. 15, 2009) ("[t]o the extent the lawsuit will focus on the defendants' formulation of policies and practices in connection with its independent contractor system, most (if not all) of those witnesses are at the defendants' corporate headquarters. . . .").[5]  Accordingly, this factor favors Plaintiffs.

### 3.       Location of Relevant Documents

The location of documentary evidence is typically considered a neutral factor in the transfer analysis.  See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.") (citing Aerotol Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)).

In any event, records concerning CA salary and supplemental compensation are not maintained in either New York or Texas.  "The maintenance, computation and distribution of Defendants' payroll with regard to CA salary compensation occurs in Charlotte, North Carolina."

---

[5]   Amick v. American Express Travel Related Servs. Co., Inc., No. 09 Civ. 9780(AKH), 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010), cited by Defendants, is not to the contrary.  In Amick, plaintiff filed an FLSA collective action in this District to recover unpaid wages and overtime compensation arising out of his employment at Defendant's North Carolina customer service call center.  Amick, 2010 WL 307579, at *1.  Plaintiff claimed that the "compensation policies in [Defendant's] Greensboro call center were developed in [Defendant's] New York City corporate headquarters."  Id.  The court granted Defendant's motion to transfer the action to the Middle District of North Carolina, however.  In reaching this decision, the Court emphasized that (1) Plaintiff was pursuing a class action under the North Carolina Wage and Hour Act – purporting to represent 450 co-workers who also worked in Greensboro; (2) no call center employees worked in New York; (3) "all of the violations of state and federal labor laws [allegedly] occurred [in Greensboro]"; (4) "Plaintiff and all putative class members were employed in Greensboro"; and (5) "[t]o the extent North Carolina's labor laws will be at issue, a federal court in North Carolina would have more familiarity with those laws than would this Court."  Id. at *1-*3.

(Def. Br. 16 n.9 (citing Deker Decl. ¶ 3))  Records related to CA supplemental compensation are maintained in New Jersey.  (Def. Reply Br. 7 (citing Deker Decl. ¶ 4))  Accordingly, this factor is neutral.

### 4.    Convenience of Parties

As to the named plaintiffs, Martignago resides in Texas, Sellers resides in Washington, and Ferguson's residence is not clear.  (Am. Cmplt. ¶ 12)  Caterina Derkasch, who filed a consent to become a party plaintiff (Dkt. No. 30), worked for Merrill Lynch in the Eastern District of New York.  Diana Martinez, who also filed a consent to become a party plaintiff (Dkt. No. 22) apparently worked for Merrill Lynch in Texas.  (Def. Supp. Reply Br. 8)  It is not clear where Derkasch and Martinez currently reside.

The Merrill Lynch Defendants are headquartered in New York and, therefore, cannot claim that New York is an inconvenient forum.

The Court concludes that convenience of the parties is a neutral factor.

### 5.    Locus of Operative Facts

"The locus of operative facts is an 'important factor to be considered in deciding where a case should be tried.'"  Age Group Ltd., 2007 WL 2274024, at *3 (quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1992)).  "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'"  Id. (quoting 800-Flowers, 860 F. Supp. at 134).

In Earley, an FLSA action challenging the defendant's overtime policies, the court ruled that the locus of operative facts was at defendant's headquarters in Massachusetts. The court noted that it was "likely that Defendant's national overtime policies were determined at its headquarters" and found that "many of the documents and executives relevant to discovery

are located [there]." Earley, 2007 WL 1624757, at *2. "Because Plaintiff's claims focus on the nature and implementation of Defendant[s'] company-wide policies and not those of the [Fort Worth branch] in particular, it is likely that most discovery will take place at [Merrill Lynch's] headquarters in [New York]." Id. at *3.

Accordingly, this factor favors Plaintiffs.

### 6.        Availability of Process to Compel Attendance of Unwilling Witnesses

"'The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.'" Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (quoting Arrow Elecs., 724 F. Supp. at 266). Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court. However, "even if [a party's] witnesses do refuse to testify, deposition testimony is an acceptable alternative." Farberware Licensing Co. LLC v. Meyer Mktg. Co., No. 09 Civ. 2570(HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009).

As noted above, the Court anticipates that critical witnesses reside in New York where Defendants are headquartered. However, given that Plaintiffs purport to file a nationwide collective action, there are likely to be witnesses from all over the United States. In such circumstances, "the availability of process is a neutral factor." See Earley, 2007 WL 1624757, at *3.

Neither side has identified any witnesses who would be unwilling to travel to New York or Texas to testify at trial. To the extent Defendants' witnesses located in Texas are Merrill Lynch employees, Defendants presumably can compel the testimony of their employees without requiring a subpoena. See Walker v. Jon Renau Collection, Inc., No. 423 F. Supp. 2d 115, 119 n.4 (S.D.N.Y. 2005) ("[t]he availability of process to compel attendance of unwilling

14

witnesses . . . is neutral in this case since defendant can compel the testimony of its own employees without resorting to a subpoena, and plaintiff has not specified any probable third-party witnesses under the subpoena power of this Court"); <u>A & A Jewellers Ltd. v. Commemorative Brands, Inc.</u>, No. 03-CV-0651E(F), 2004 WL 912929, at *1 (W.D.N.Y. Mar. 30, 2004) ("With respect to . . . the availability of process to compel witnesses to testify at trial – [defendant] has not identified any witnesses who are unwilling to travel to this district to testify. Indeed, [defendant's] witnesses are its own employees, whom [defendant] will presumably make available for trial."); <u>Schnabel</u>, 322 F. Supp. 2d at 518 ("the availability of process to compel attendance of unwilling witnesses . . . is mostly irrelevant as it appears that all of [defendant's] witnesses are its officers and employees"); <u>Payne v. Taylor Vision Resources</u>, No. Civ. 3:02CV2234(AWT), 2003 WL 22218142, at *3 (D. Conn. Sept. 23, 2003) ("as to the availability of process to compel attendance of unwilling witnesses, the defendants have failed to make a specific showing that any significant non-party witness would be unwilling to travel to Connecticut . . . to testify. . . . As to witnesses who are employees of the defendants, the defendants are in a position to facilitate travel to Connecticut by any unwilling employees.  Thus, this factor weighs slightly in favor of plaintiffs.")

The availability of process is a neutral factor here.

### 7.    <u>The Relative Means of the Parties</u>

"'Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed.'" <u>Rindfleisch</u>, 752 F. Supp. 2d at 260 (quoting <u>800-Flowers</u>, 860 F. Supp. at 135).

Neither side has argued that the relative means of the parties weighs in favor of, or against, transfer.  Accordingly, this factor is neutral.

### 8.     The Forum's Familiarity With The Governing Law

A court may consider the forums' familiarity with the governing law; however, this factor is "one of the least important factors in determining a motion to transfer. . . ."  Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004) (citing Lesser v. Camp Wildwood, No. 01 Civ. 4209(RWS), 2002 WL 1792039, at *6 (S.D.N.Y. Aug. 2, 2002); Vassallo v. Niedermeyer, 495 F. Supp. 757, 760 (S.D.N.Y. 1980)).

This Court and the Northern District of Texas "are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiffs' federal FLSA claims." Rindfleisch, 752 F. Supp. 2d at 261 (citing Farrior, 2009 WL 113774, at *8 n.6; Earley, 2007 WL 1624757, at *3).  While Defendants argue that Martignago has asserted a claim for breach of contract and unjust enrichment under Texas law (Def. Reply Br. 9), "'federal courts are deemed capable of applying the substantive law of other states.'"  Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106(PGG), 2009 WL 2252116, at *8 (S.D.N.Y. July 28, 2009) (quoting Prudential Sec. Inc. v. Norcom Dev., Inc., No. 97 Civ. 6308(DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998)).  Accordingly, this factor is neutral.

### 9.     Efficiency

The parties have not offered "evidence of circumstances, such as crowded docket conditions, that might militate a speedier prosecution of the action in one District as opposed to another." Montgomery, 2007 WL 576128, at *5 (citing DeJesus v. Nat'l R. Passenger Corp., 725 F. Supp. 207, 209 (S.D.N.Y. 1989)).  Accordingly, this factor is neutral.

*        *        *        *

Having considered all of the relevant factors under 28 U.S.C. § 1404(a), the Court finds that Defendants have not met their burden of demonstrating that transfer is appropriate. While most of the factors are neutral, convenience of the witnesses, locus of operative facts, and Plaintiff's choice of forum all weigh against transfer; none of the factors favor Defendants.

## CONCLUSION

For the reasons stated above, Defendants' motion to transfer this action to the Northern District of Texas is DENIED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 13).

Dated: New York, New York
         January 13, 2012

                              SO ORDERED.

                              Paul G. Gardephe
                              United States District Judge

17