**STOWELL & FRIEDMAN, LTD.**
Jennifer Schoen Gilbert
303 W. Madison St, Suite 2600
Chicago, IL 60606
Telephone: 312-431-0888
Jgilbert@sfltd.com

**WERMAN LAW OFFICE, P.C.**
Douglas M. Werman
77 W. Washington, Suite 1402
Chicago, IL. 60602
Telephone: 312-419-1008
dwerman@flsalaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY MARTIGNAGO, AMY FERGUSON, CINDY SELLERS, CATERINA DERKASCH, JUNE PARMAN-FLAX and ROBIN GRANDUSKY, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BANK OF AMERICA CORPORATION, )<br><br>Defendants. | Case No. 11 CIV 03923 (PGG)<br><br>**Judge Paul G. Gardephe** |

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT

## Table of Contents

INTRODUCTION ........................................................................................................... 1

I.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2
     A.   Factual Allegations .................................................................................. 2
     B.   The Litigation .......................................................................................... 2
     C.   Investigation and Discovery .................................................................... 4
     D.   Settlement Negotiations ........................................................................... 5

II.  SUMMARY OF THE SETTLEMENT TERMS ............................................... 6
     A.   The Settlement Fund ................................................................................ 6
     B.   Eligible Employees .................................................................................. 6
     C.   Releases .................................................................................................... 7
     D.   Allocation Formula .................................................................................. 7
     E.   Attorneys' Fees, Litigation Costs, and Service Awards ........................ 10
     F.   Settlement Claims Administrator ........................................................... 12

III. CLASS ACTION SETTLEMENT PROCEDURE .......................................... 12

IV.  PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE ...... 14
     A.   The Settlement is Fair, Reasonable, and Adequate ............................... 16
          1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).. 17
          2.   The Reaction of the Class Has Been Positive  (*Grinnell* Factor 2). ............................. 17
          3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
               Responsibly (Grinnell Factor 3) ..................................................................... 18
          4.   Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)... 20
          5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)........ 21
          6.   Defendants' Ability to Withstand a Greater Judgment is Not Determinative (Grinnell
               Factor 7). .............................................................................................. 21
          7.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and
               the Attendant Risks of Litigation (Grinnell Factors 8 and 9). ............................. 21

V.   CERT. OF THE RULE 23 CLASS FOR SETTLEMENT PURPOSES IS
     APPROPRIATE ................................................................................................ 23
     A.   Numerosity .............................................................................................. 25
     B.   Commonality ........................................................................................... 25
     C.   Typicality ................................................................................................ 26
     D.   Adequacy of the Named Plaintiffs .......................................................... 27
     E.   Certification is Proper Under Rule 23(b)(3) .......................................... 28
          1.   Common Questions Predominate ............................................................ 28
          2.   A Class Action is a Superior Mechanism ................................................ 29

VI.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ....... 31

VII. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ...................... 32

VIII. THE COURT SHOULD APPROVE THE PARTIES' FLSA SETTLEMENT .......... 34

A.    The Proposed Settlement Is the Product of Contested Litigation ..................................... 34

B.    The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A Bona Fide Dispute Between The Parties. ................................................................................................. 35

**CONCLUSION** ............................................................................................................. 36

## Table of Authorities

### Cases

*Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d at 441, 446-51 (S.D.N.Y. 2010)... 21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. at 591, 617, 620, 623 (1997) ............................ *passim*

*Bayles v. American Med.Response of Colo., Inc.*, 950 F. Supp. at 1053, 1067 (D. Colo. 1996).. 34

*Beatty v. Capital One*, No. 12-cv-434, Dkt. No. 75 (N.D. Ill. December 13, 2012) ..................... 9

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. at 697 (1945)............................................................. 34

*Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 4526673 at 1 (N.D. Cal. Jun. 30, 2011) ...................................................................................................................................... 9

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 at 12-13 (E.D.N.Y. May 22, 1990) ..................................................................................................................................... 22

*Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at 2 (S.D.N.Y. May 9, 2012) ............................................................................................................................................ 27, 30

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at 10 (S.D.N.Y. June 7, 2011)............................................................................................................. 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d at 229, 249 (2nd Cir. 2007)........................................................................................ 10

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 448, 463 (2d Cir. 1974)................................ *passim*

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 at 3-7 (S.D.N.Y. May 11, 2010)....................................................................................................... 9,25

*Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 at 3-5 (S.D.N.Y. Nov. 27, 2009) .......................................................................................... 15, 26, 29

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d at 473, 483 (2d Cir. 1995) .......................... 25

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. at 1422, 1424 (E.D.N.Y. 1989) .... 23

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. at 152, 161, 164 (S.D.N.Y. 2008).......................30

*DeMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at 7 (S.D.N.Y. Aug. 23, 2010)..........................................................................................................................................34

*Denney v. Deutsche Bank AG*, 443 F.3d at 253, 268 (2d Cir. 2006) .............................. .........27

*Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 2945556 at 3, 5, 6 (S.D.N.Y. July 22, 2010)....................................................................................................................... 14, 19

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200 at 1-3 (S.D.N.Y. Jan. 21, 2011) .............................................................................................................................. 19, 24, 26

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at 6 (E.D.N.Y. May 29, 2007) . 27

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. at 147, 157 n. 13 (1982)............................................. 25

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596 at 5 (S.D.N.Y. Mar. 24, 2008) .................................................................................................................................. 10

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)................................................ 16

*Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir.1996)............................................ 34

*Green v. Wolf Corp.*, 406 F.2d at 291, 301 (2d Cir. 1968)......................................................... 29

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. at 165 (1989)..................................................... 34

*Howes v. Atkins*, 668 F. Supp. at 1021, 1027 (E.D. Ky. 1987).................................................. 11

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174, 176-79, (S.D.N.Y. 2000) ...................................................................................................................... *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,  Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177 at 4 (S.D.N.Y. July 27, 2007)................................................................................................. 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 768, 790-92 (3d Cir. 1995)................................................................................................................. 24

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at 12 (S.D.N.Y. Oct. 26, 2004)........................................................................................................................... 14

*In re Ira Haupt & Co.,* 304 F. Supp. at 917, 934 (S.D.N.Y. 1969) ....................................... 20

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. at 57, 60 (S.D.N.Y. 1993) ................... 32

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. at 104, 126 (S.D.N.Y. 1997)........................ 20

*In re Tex. Prison Litig.*, 191 F.R.D. 164, 178 (W.D. Mo. 1999) ................................................. 10

*In re Traffic Exec. Ass'n*, 627 F.2d at 631, 634 (2d Cir. 1980) .................................................... 15

*In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 138-40 (2d Cir. 2001)..... 28, 29, 30

*In re: Wal-Mart Wage and Hour Emp't Practices Litig.,* MDL 1735, 06-cv-0225, Docket No. 491 at ¶ 11 (D. Nev. Nov. 2, 2009)................................................................................... 10

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535, 537 (3d Cir. 2004).................... 14, 18

*In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D. at 69, 199 (E.D.N.Y. 2008) ................................... 30

*Joel A. v. Giuliani*, 218 F.3d at 132, 138-39 (2d Cir. 2000) ........................................................ 23

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 at 3, 9-10, 21 (S.D.N.Y. Sept. 16, 2011) ...................................................................................................................... 12, 19, 32

*Kamean v. Local 363, Int'l Bhd. of Teamsters Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. at 391, 394  (S.D.N.Y. 1986) ................................................................................. 25

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 at 4-10 (E.D.N.Y. Jan. 20, 2010) ............................................................................................................................ 9, 10, 19

*Lenahan v. Sears, Roebuck and Co.*, No.02 Civ. 45, 2006 WL 2085282 at 11-16 (D.N.J. July 24, 2006) ............................................................................................................................... 9

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1350, 1352-54 (11th Cir. 1982)........ 15, 34

*Marisol A. v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997)................................................... 24, 26

*Martens v. Smith Barney Inc.,* 181 F.R.D. at 243, 259 (S.D.N.Y. 1998) ....................................... 27

*Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at 5 (S.D.N.Y. Dec. 13, 2011) .................................................................................................................................. 19

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d at 1072, 1079 (2d Cir. 1998) ................. 14

*McBean v. City of New York*, 228 F.R.D. at 487, 502 (S.D.N.Y. 2005)........................................ 29

*McKenna v. Champion Int'l Corp.*, 747 F.2d at 1211, 1213 (8th Cir. 1984) ............................... 34

*McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at 2, 5 (S.D.N.Y. Mar. 3, 2010) ................................................................................... 19, 27

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465 at 5 (S.D.N.Y. Mar. 31, 2009) ......................................................................... 10

*Newman v. Stein*, 464 F.2d at 689, 693 (2d Cir. 1972)................................................................ 22

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. at 330, 339 (S.D.N.Y. 2004)................................... 28

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 615, 628 (9th Cir. 1982) ....................... 22

*Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419 at 2-4, 6 (S.D.N.Y. Jun. 22, 2012) ..................................................................................................................... 9, 10, 15

*Parks v. Dick's Sporting Goods, Inc.* at ¶ 13 (W.D.N.Y. Jan. 29, 2010)...................................... 10

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983) ................................................................................................................... 25

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. at 26, 31 (E.D.N.Y. 2006) ........ 24

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822 at 9 (S.D.N.Y. Aug. 16, 2011) ........................................................................................................................................ 12

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ............................................................ 26

*Schmidt v. Smith & Wollensky*, 268 F.R.D. at 323, 328 n. 5 (N.D. Ill. 2010).............................. 27

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124 at 6-9, 14-15 (S.D.N.Y. Apr. 16, 2012)................................................................................................................... 9, 12

*Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720S, 2008 WL 7630102, at 3 (W.D.N.Y. June 28, 2008) ........................................................................................................................... 10

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at 16 (S.D.N.Y. Sept. 29, 2006) ........................................................................................................................................ 29

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at 7 (S.D.N.Y. Sept. 28, 2007) ........................................................................................................................................ 27

*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at 6 (S.D.N.Y. Jan. 12, 2007)........................................................................................................................ 26

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at 6 (S.D.N.Y. June 25, 2007). ..................................................................................................................................... 20

*Wagner v. NutraSweet Co.*, 95 F.3d at 527, 534 (7th Cir. 1996)................................................... 26

*Westerfield v. Wash. Mut. Bank*, Nos. 06-CV-2817, 08 Civ. 287, 2009 WL 5841129, at 4 (E.D.N.Y. Oct. 8, 2009) ............................................................................................................ 10

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at 7 (E.D.N.Y. Feb. 18, 2011) . 10

*Woolfson et al v. Caregroup, Inc. et al*, No. 1:09-cv-11464-JLT (D. Mass. Sept. 13, 2010) (Docket No. 28) ......................................................................................................................... 10

*Worden v. Valeo Electrical Sys., Inc.*, 04-cv-6039-JWF, Docket No. 19 (W.D.N.Y. Mar. 7, 2005) .................................................................................................................................................. 10

*Wren v. RGIS Inventory Specialists*, 06-cv-5778 JCS, Docket No. 932 at 39-42 (N.D. Ca. April 1, 2011) ..................................................................................................................................... 10

*Wright v. Stern*, No. 01 Civ. 4437 (DC), Docket No. 207 at 54 (S.D.N.Y. May 15, 2008) ......... 10

## Rules

U.S.C. § 216(b) ............................................................................................................................... 34

Fed. R. Civ. P. 23 ..................................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ....................................................................................................... 24, 28, 29

Fed. R. Civ. P. 23(a)(3).................................................................................................................. 26

Fed. R. Civ. P. 23(a)(4).................................................................................................................. 27

Fed. R. Civ. P. 23(b) ...................................................................................................................... 24

Fed. R. Civ. P. 23(b)(3).................................................................................................. 23, 24, 28, 29

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 32

Fed. R. Civ. P. 23(c)(3).................................................................................................................. 32

Fed. R. Civ. P. 23(e) ...................................................................................................................... 15

Fed. R. Civ. P. 23(g) ...................................................................................................................... 31

Fed. R. Civ. P. 23(h) ...................................................................................................................... 12

Fed. R. Civ. P. 54(d)(2).................................................................................................................. 12

## **Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002). ............................................................................................................................................. *passim*

*Manual for Complex Litigation* (3d ed.) § 30.41 ......................................................................... 15

## INTRODUCTION

Plaintiffs Nancy Martignago, Amy Ferguson, Cindy Sellers, Caterina Derkasch, June Parman-Flax, Robin Grandusky and Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Bank of America Corporation ("Defendants" or "Firm") (collectively "the Parties"), seek preliminary approval of their proposed Joint Stipulation of Settlement and Release ("Settlement" or "Settlement Agreement").  The Settlement will resolve the overtime-related state law wage and hour class action claims of persons employed by Defendants as Client Associates ("CAs") in the states of California, New York, Maryland and Washington and, for persons employed as CAs in other states who elect to opt-in to the litigation, overtime claims arising under the Fair Labor Standards Act ("FLSA").

The proposed Settlement provides significant monetary relief of up to $12,000,000 for Class Members and is "fair, reasonable and adequate."  Because the proposed Settlement satisfies all the criteria for preliminary class settlement approval, the Court should grant this motion.  The Parties request, therefore, that the Court enter an Order that (1) grants preliminary approval of the proposed Joint Stipulation of Settlement and Release, Declaration of Douglas M. Werman ("Werman Decl.") Ex. A, attach. 1[1]; (2) certifies the proposed classes for settlement purposes; (3) appoints as Class Representatives Nancy Martignago, Amy Ferguson, Cindy Sellers, Caterina Derkasch, June Parman-Flax and Robin Grandusky; (4) appoints Jennifer Schoen Gilbert, Suzanne E. Bish and George Robot of Stowell & Friedman, Ltd., and Douglas M. Werman of Werman Law Office, P.C., as Class Counsel; (5) approves the Parties' proposed Notice programs (Werman Decl., Ex. A, attach. 2 and 3); (6) sets a date for the Fairness Hearing;

---

[1] Unless otherwise indicated, all exhibits are attached to the Declaration of Douglas M. Werman ("Werman Decl."), attached hereto as Exhibit A.

1

and (7) sets a date for Class Counsel to file a petition for an award of attorneys' fees and costs.

A proposed Order granting this motion is attached hereto as Exhibit C.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations

Plaintiffs and Class Members are current and former employees of one or more

Defendants who have worked as Client Associates ("CAs") at one or more of Defendants'

branch offices nationwide.  Plaintiffs alleged that Defendants violated the Fair Labor Standards

Act ("FLSA") and the California, New York, Washington and Maryland state wage and hour

laws related to overtime pay by failing to pay CAs overtime wages for the time they worked in

excess of 40 hours per week and other compensation as alleged in the Second Amended

Complaint.  *See* Declaration of Jennifer Schoen Gilbert ("Gilbert Decl."), attached hereto as

Exhibit B at ¶ 15.

Plaintiffs' claims included that they and other CAs were paid overtime based on an

incorrect and low regular rate of pay; that Defendants failed to properly record and account for

all overtime hours worked by CAs, thereby creating incomplete and inaccurate work and payroll

records; that with regard to CAs employed in California, Defendants failed to furnish accurate

wage statements and failed to provide meal and rest periods; and that with regard to CAs

employed in New York, Defendants failed to pay spread of hours compensation.  Gilbert Decl.,

Ex. B at ¶ 16; Dkt. No. 51 (Second Amended Complaint).

### B.      The Litigation

On June 9, 2011, Plaintiff Martignago filed a collective action lawsuit in the United

States District Court for the Southern District of New York, Case No. 11-cv-03923-PGG,

captioned *Martignago, et al. v.  Merrill Lynch & Co., Inc., et al.*, on behalf of current and former

CAs alleging Merrill Lynch violated the FLSA by failing to pay CAs overtime wages for the time they worked in excess of 40 hours a week. Gilbert Decl., Ex. B at ¶ 17; Dkt. No. 1. On July 6, 2011, Defendants initiated their request to file and brief a Motion to Transfer Venue to the United States District Court for the Northern District of Texas. Gilbert Decl., Ex. B at ¶ 17; *see also* July 7, 2011 Order confirming pre-motion teleconference, Dkt. No. 9. Notwithstanding, on August 4, 2011, Defendants filed their Answer to Plaintiff Martignago's Complaint. Gilbert Decl., Ex. B at ¶ 17; Dkt. No. 12.

On August 25, 2011, Plaintiff Martignago filed an Amended Complaint adding Plaintiffs Ferguson and Sellers as Named Plaintiffs.[2]  Gilbert Decl., Ex. B at ¶ 18; Dkt. No. 24. On September 1, 2011, Defendants renewed their request to file and brief a Motion to Transfer Venue to the United States District Court for the Northern District of Texas. Gilbert Decl., Ex. B at ¶ 18; *see* Order setting briefing schedule, dated September 2, 2011, Dkt. No. 25. On September 2, 2011, the Court ordered a schedule for supplemental briefing on Defendants' Motion to Transfer Venue to the United States District Court for the Northern District of Texas. Gilbert Decl., Ex. B at ¶ 18; Dkt. No. 25.   On September 19, 2011, Defendants initiated their request to file and brief a Motion to Dismiss and Strike pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). Gilbert Decl., Ex. B at ¶ 18; *see also* September 20, 2011 Order, Dkt. No. 31. On October 6, 2011, the Court ordered that no motions be filed by any party until the Court resolved Defendants' Motion to Transfer Venue to the United States District Court for the Northern District of Texas. Gilbert Decl., Ex. B at ¶ 18; Dkt. No. 36.

---

[2] On September 28, 2011, the Court entered a Joint Stipulation to Dismiss Plaintiff Deeney from the Collective Action.

On January 13, 2012, the Court denied Defendants' Motion to Transfer to the United States District Court for the Northern District of Texas.  Gilbert Decl., Ex. B at ¶ 19; Dkt. No. 39.

On February 10, 2012, Plaintiffs Martignago, Ferguson and Sellers filed a Second Amended Complaint adding Derkasch, Parman-Flax and Grandusky as Named Plaintiffs and Federal Rule of Civil Procedure 23 ("Rule 23") class action claims under New York, California, Maryland and Washington wage and hour laws related to overtime pay.   Gilbert Decl., Ex. B at ¶ 20; Dkt. No. 51.   On February 24, 2012, the Defendants filed an Answer to the Second Amended Complaint.  Gilbert Decl., Ex. B at ¶ 20; Dkt. No. 52.

**C.**   **Investigation and Discovery**

Prior to initiating the FLSA action and the Rule 23 actions, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses likely to be raised by Defendants.  Gilbert Decl., Ex. B at ¶ 21.

Prior to and after filing the FLSA action and Rule 23 actions, Plaintiffs' Counsel conducted in-depth interviews with approximately 35 CAs who worked or had worked in various Merrill Lynch branch offices across the country to determine Merrill Lynch firm-wide policies, the hours that they worked, the wages that they were paid, the nature and duties and responsibilities, and other information relevant to their claims.  *Id.* at ¶ 22.  Plaintiffs' Counsel also obtained and reviewed documents from their clients related to their employment with Merrill Lynch, including pay stubs, compensation plans, supplemental compensation arrangements, offer letters, performance reviews, job descriptions, and other related documents. *Id.*

On May 7, 2012, the Court entered a Protective Order governing the exchange of documents and information in this lawsuit. *Id.* at ¶ 23; Dkt. No. 62. Following the entry of the Protective Order, Plaintiffs obtained substantial data and documents. Defendants produced a voluminous data sampling based on ten complexes across the United States where the Named Plaintiffs worked that reflected timekeeping records, payroll records, pay stubs, the number of Class Members in the CA title, average rates of pay, supplemental compensation pay, weeks worked, branch location, and code descriptions. Gilbert Decl. ¶ 23. Defendants also produced to Plaintiffs Merrill Lynch's overtime, time off, timekeeping, CA compensation and CA supplemental compensation policies. *Id.*

### D.    <u>Settlement Negotiations</u>

On or about May 16, 2012, Plaintiffs Martignago, Ferguson, Sellers, Derkasch, Parman-Flax and Grandusky and the Defendants agreed to attempt to resolve the *Martignago* action through non-binding, private mediation. Gilbert Decl., Ex. B at ¶ 24. Over the several months leading up to the mediation, the Parties engaged in further informal exchange of additional documents and data to assess the claims in advance of private mediation. *Id.* Plaintiffs continued their investigation during this time period.

On August 28, 2012, the Parties participated in a mediation at Gregorio, Haldeman & Rotman in San Francisco conducted by David Rotman, a nationally renowned and experienced employment law mediator. *Id.* at ¶ 25. At the mediation session, the Parties made significant progress towards reaching a settlement. At the end, Mr. Rotman made a mediator's proposal to resolve the matter. *Id.* On September 25, 2012, Mr. Rotman informed the parties that both sides had agreed to accept his proposal to resolve the claims at issue for $12,000,000. During the next five months, the Parties continued to negotiate, and eventually reached agreement on the

remaining terms of the settlement, which were memorialized in a formal Settlement Agreement. *Id.*

## II.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Fund

The Settlement creates a common fund of $12,000,000 to settle claims against Defendants (the "Gross Value Fund").   Werman Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶¶ 34, 71.  The Fund covers Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs.  *Id.*  Defendants will pay all applicable employer-side payroll taxes.  *Id.* at ¶ 90.

### B.   Eligible Employees

Rule 23 Class Members and FLSA Class Members include two groups of CAs employed by Defendants that are eligible to receive payments from the Net Value Fund.

The "Rule 23 Classes" consist of the following four sub-classes of individuals ("Rule 23 Class Members"):

> 1.      "California Rule 23 Class Members" means all current and former CAs employed by Defendants in the State of California during the period from February 1, 2008 through and including December 31, 2012 ("California Class Period"). Werman Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶¶ 3, 27.

> 2.      "Maryland Class Members" means all current and former CAs employed by Defendants in the State of Maryland during the period from February 1, 2009 through and including December 31, 2012 ("Maryland Class Period"). *Id.* at ¶¶ 14, 27.

> 3.      "New York Rule 23 Class Members" means all current and former CAs employed by Defendants in the State of New York during the period from February 1, 2006 through and including December 31, 2012 ("New York Class Period"). *Id.* at ¶¶ 16, 27.

> 4.      "Washington Rule 23 Class Members" means all current and former CAs employed by Defendants in the State of Washington during the period from

6

February 1, 2009 through and including December 31, 2012 ("Washington Class Period"). *Id.* at ¶¶ 24, 27.

The "FLSA Class Members" consist of all individuals who were CAs employed by Defendants during the period from January 1, 2010 through and including December 31, 2012, ("FLSA Class Period").[3] *Id.* at ¶ 12.

### C.   Releases

The Settlement Agreement provides that all Rule 23 Class Members who do not timely opt out of the Settlement will release the claims asserted in the Second Amended Complaint. Werman Dec., Ex. A, attach. 1 (Settlement Agreement) at ¶ 91.  Rule 23 Class Members who timely sign and negotiate their settlement checks will also release their federal FLSA claims for overtime claims as plead in the Second Amended Complaint. *Id.*

FLSA Class Members who timely return an Opt-In Statement and elect to become party plaintiffs to the litigation ("Opt-In Plaintiffs") will release their federal FLSA claims for overtime claims.  *Id.* at ¶ 91.

### D.   Allocation Formula

The Settlement Agreement provides significant monetary relief to both Rule 23 and FLSA Class Members using an allocation formula based on the relative number of weeks for which Class Members worked during the California, New York, Maryland and Washington Class Periods and the FLSA Class Period.   Werman Dec., Ex. A, attach. 1 (Settlement Agreement) at ¶ 8.  For any FLSA Class Member who opts-in by filing a Consent to Become

---

[3] The FLSA Class Period for Named Plaintiffs Nancy Martignago and Amy Ferguson and Consent Plaintiffs Alma Alcoser, Crystal Oswalt, Diana Martinez, Laurie Zimmer, and Maria Bridgeford shall be extended to the period that is three (3) years prior to the filing of each of their respective "Consent to Become Party Plaintiff" forms, through and including December 31, 2012.

Party Plaintiff form during the course of this litigation, that Class Member's FLSA Class Period will be extended to the period that is three years prior through their filing. *Id*. at ¶ 12. The following is a brief explanation of the proposed allocation formula. There are five Classes: FLSA Class, California Rule 23 Class, New York Rule 23 Class, Maryland Rule 23 Class, and Washington Rule 23 Class. After the deduction of attorneys' fees, service awards, litigation costs, and the expenses of administering the Settlement from the Gross Value Fund, the "Net Settlement Fund" will be allocated among the respective five classes (*i.e.*, each Rule 23 Class and FLSA Class) based on the number of workweeks worked by members of each respective class during their respective Class Periods as compared to the total number of workweeks worked by all Class Members during all Class Periods. *Id*. at ¶ 84. In addition, and due to the daily overtime requirements and penalties available under California law, the California Rule 23 Class workweeks will receive twenty-percent more weight than workweeks for the New York Rule 23 Class, Maryland Rule 23 Class, Washington Rule 23 Class and the FLSA Class. *Id*. For purposes of this allocation, weeks worked by a Rule 23 Class Member in California, New York, Maryland and/or Washington shall be counted as workweeks in that respective Rule 23 Class but shall not be counted as workweeks with regard to the FLSA Class. Based on available data, the percentage share of the Net Settlement Funds allocated to the five classes are projected to be:

| Class | Class Share |
|---|---|
| California | 17.23% |
| New York | 19.83% |
| Maryland | 1.91% |
| Washington | 1.78% |
| FLSA | 59.25% |

Thus, for distribution purposes, the Settlement Claims Administrator will divide the total number of workweeks for each Class Member by the total number of workweeks for all Class

Members to determine each Class Member's *pro rata* portion of the Net Settlement Fund. *Id.* at ¶ 84. The Settlement Claims Administrator will then multiply each Class Member's portion of the Net Settlement Fund by the Net Settlement Fund to determine the amount to be paid to each Class Member. *Id.*

Except as provided in paragraphs 73 and 74 of the Settlement Agreement, the entire Net Settlement Fund allocated to each of the California, New York, Maryland, and Washington Classes will be distributed to the members of each respective class. Courts have approved similar allocation formulas in other wage and hour class action settlements that included nationwide FLSA claims and multiple state law class claims.[4]

In the event that Settlement checks to Rule 23 Class Members remain uncashed 120 days after the Final Approval Order, the funds attributable to those Rule 23 Class Members will be redistributed among the Rule 23 Class Members who have timely cashed their checks. In the event that such distribution is not economically sensible due to the nominal amount of funds, the funds will be distributed to charity under the *cy pres* doctrine. *Id.* at ¶¶ 73, 74. Only funds attributable to the FLSA Class will be returned to Defendants in the event the number of Opt-In

---

[4] *See, e.g., Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *2-4 (S.D.N.Y. June 22, 2012) (granting final approval to settlement including nationwide FLSA claims and California and New York state law Rule 23 claims); *Beatty v. Capital One*, No. 12-cv-434, Dkt. No. 75 (N.D. Ill. December 13, 2012) (approving settlement of nationwide FLSA claims); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *6-9 (S.D.N.Y. Apr. 16, 2012) (approving settlement including nationwide FLSA claims and New York and New Jersey state law Rule 23 claims); *Buccellato v. AT&T Operations, Inc.*, No. C10-463, 2011 WL 4526673, at *1 (N.D. Cal. Jun. 30, 2011) (granting final approval of settlement of nationwide FLSA claims and Rule 23 claims in five states); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-7 (S.D.N.Y. May 11, 2010) (approving settlement of nationwide FLSA claims and Rule 23 claims in four states); *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *4-7 (E.D.N.Y. Jan. 20, 2010) (granting final approval of settlement involving nationwide FLSA claims and fourteen Rule 23 state law subclasses); *Lenahan v. Sears, Roebuck and Co.*, Civ.No. 02-45, 2006 WL 2085282, at *11-16 (D.N.J. July 24, 2006) (granting final approval in multi-state wage and hour class and collective action).

Statements filed by FLSA Class Members do not exhaust the amount of the Net Value Fund allocated to the FLSA Class.  *Id.* at ¶ 75.

### E.      Attorneys' Fees, Litigation Costs, and Service Awards

Plaintiffs' Counsel intend to seek attorneys' fees and reimbursement for costs which would be paid to Plaintiffs' Counsel from the Gross Value Fund.  Werman Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶ 81.  At this time, Plaintiffs' Counsel are not prepared to make a formal request for attorneys' fees but present the case law from this District which has resulted in awards of fees at the time of Final Approval at a benchmark of approximately one-third of gross value funds with attorneys' fees awards that are both higher and lower.[5]  Plaintiffs' Counsel do

---

[5] This is a typical fee award in the Second Circuit in wage and hour settlements generally. *See, e.g., Palacio*, 2012 WL 2384419, at *6 ("Class Counsel's request for one-third of the fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)). *See also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2nd Cir. 2007) (finding 30% award from fund of $42.5 million reasonable); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (awarding 33 1/3% from settlement fund); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of the common fund as fees and collecting cases from courts in the Second Circuit); *Woolfson et al v. Caregroup, Inc. et al.*, No. 1:09-cv-11464-JLT (D. Mass. Sept. 13, 2010) (Docket No. 28) (approving 33% of $8,500,0000 settlement in attorneys' fees); *Khait*, 2010 WL 2025106, at *8-9 (granting over $3 million in attorneys' fees to Class Counsel in FLSA and multistate wage and hour case); *In re: Wal-Mart Wage and Hour Emp't Practices Litig.*, MDL 1735, 06-cv-0225, Docket No. 491 at ¶ 11 (D. Nev. Nov. 2, 2009) (awarding 33 1/3% of either $65 million or $85 million settlement fund in attorneys' fees); *Westerfield v. Wash. Mut. Bank*, Nos. 06-CV-2817, 08 Civ. 287, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (30% of $38 million fund awarded as fees); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009); *Parks v. Dick's Sporting Goods, Inc.*, 6:05-cv-06590-CJS-JWF, Docket No. 145 at ¶ 13 (W.D.N.Y. Jan. 29, 2010) (awarding attorneys' fees and costs in the amount of 40% of the common fund in an FLSA class misclassification class action); *Wren v. RGIS Inventory Specialists*, 06-cv-5778 JCS, Docket No. 932 at 39-42 (N.D. Ca. April 1, 2011) (awarding 42% of $27 million settlement fund in attorneys' fees); *Wright v. Stern*, No. 01 Civ. 4437 (DC), Docket No. 207 at 54 (S.D.N.Y. May 15, 2008) (awarding a total of 38% of $21 million settlement fund in attorneys' fees); *Worden v. Valeo Electrical Sys., Inc.*, 04-cv-6039-JWF, Docket No. 19 (W.D.N.Y. Mar. 7, 2005) (awarding attorneys' fees in the amount of 38% of the common fund, plus costs); *In re Tex. Prison Litig.*,

not, however, intend to seek an amount of attorneys' fees in excess of one-fourth (25%) of the Gross Value Fund. The reasonableness of the attorneys' fee award should be made only with additional information not available at this time which includes, among other things, the reaction of the class to the settlement, the intended payouts of the Gross Value Fund and the amount, if any, that will not be paid to class members. Plaintiffs' Counsel respectfully submit that the attorneys' fee request should be deferred until such time as additional information helpful to Plaintiffs' Counsel and the Court in setting the reasonableness of an attorneys' fee award is available at Final Approval.

Plaintiffs will apply for the following services awards to each of the Class Representatives: $10,000 to Nancy Martignago, $8,500 to Cindy Sellers, $7,500 to Amy Ferguson, $7,500 to June Parman-Flax, $7,500 to Robin Grandusky and $7,500 to Caterina Derkasch. *Id.* at ¶¶ 76-79. Plaintiffs will also apply for services awards to the eight (8) Consent Plaintiffs in the amount of $2,500 each. *Id.* at ¶ 80. Class Counsel will ask the Court to approve these service awards in recognition of the varying degrees of risks taken by the Class Representatives and Consent Plaintiffs and for their service to the Classes.

The Class Representatives assisted Plaintiffs' Counsel by providing facts relevant to the claims asserted in this case prior to the filing of the Complaint, Amended Complaint and Second Amended Complaint and as the case progressed, providing Counsel with relevant documents in their possession, informing putative Class Members of the lawsuit and encouraging them to assist Plaintiffs' Counsel and helping Counsel to prepare for the mediation. Gilbert Decl., Ex. B at ¶ 27. The Consent Plaintiffs also provided Plaintiffs' Counsel with facts relevant to the

---

191 F.R.D. 164, 178 (W.D. Mo. 2000) (awarding 49.5% of the fund as fees and expenses); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (awarding 40% of the fund as fees).

claims asserted in this case during their involvement and otherwise assisted counsel.[6]  The Court

need not rule on the proposed service awards now.  Plaintiffs will move for Court approval of the

Service Awards simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will

file a Motion for Approval of Attorneys' Fees, Service Awards, and Reimbursement of Expenses

along with their Motion for Final Approval of the Settlement.

### F.      Settlement Claims Administrator

After soliciting competitive bids, the Parties have jointly selected KCC Class Action

Services to serve as the Settlement Claims Administrator.  Werman Decl., Ex. A at ¶ 34.  The

Settlement Claims Administrator's fees will be paid from the Gross Settlement Fund.  Werman

Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶ 71.  The Claims Administrator estimates the

cost of administration to be approximately $100,000.  Werman Decl., Ex. A at ¶ 34.

## III.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.      Preliminary approval of the proposed settlement after submission to the Court of a
        written motion for preliminary approval;

2.      Dissemination of mailed and/or published notice of settlement to all affected class
        members; and

3.      A final settlement approval hearing at which class members may be heard
        regarding the settlement, and at which argument concerning the fairness,
        adequacy, and reasonableness of the settlement may be presented.

---

[6] Similarly service awards are routinely awarded in wage and hour class actions. *See, e.g.*, *Sewell*, 2012 WL 1320124, at *14-15 (granting service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement), and listing supporting cases); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (granting service awards of $10,000 to class representatives in wage and hour settlement); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (granting service awards of $15,000 and $5,000 to class representatives in wage and hour settlement).

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.25, *et seq.* (4th ed. 2002) [hereinafter *Newberg*].  Plaintiffs request that the Court take the first step by granting preliminary approval of the Settlement Agreement, certifying the proposed classes for settlement purposes, approving Plaintiffs' Proposed Notices, and authorizing Plaintiffs' Counsel to issue them.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. The Notices will be mailed to Class Members within forty-five (45) days after the Court grants the Parties' Motion for Preliminary Approval of Settlement. Werman Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶¶ 47, 48.

2. Rule 23 Class Members will have seventy-five (75) days after the date the Settlement Notices are mailed to opt out of the Settlement or object to it ("Notice Period").  *Id.* at ¶ 50.

3. FLSA Class Members will have seventy-five (75) days after the date the Settlement Notices are mailed to return Opt-In Statements to join the litigation as Class Members to receive a settlement payment.  *Id.* (Settlement Agreement).  *Id.* at ¶ 55.

4. A Fairness Hearing will be held as soon as is convenient for the Court.

5. Plaintiffs will file a Motion for Final Approval of Settlement no later than fifteen (15) days before the Fairness Hearing.  *Id.* at ¶ 65.

6. After the Fairness Hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the Settlement shall be the date the Court enters its Final Order and Judgment.  *Id.* at ¶ 11.

7. If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are resolved in favor of final approval.  *Id.*

8. The Settlement Claims Administrator will distribute Settlement checks to the Class Members, as well as Class Counsel's attorneys' fees and costs, and Service Awards seven (7) days after the time to appeal the Final Order and Judgment has

expired or seven days after any appeals are resolved and the settlement is fully and finally approved. *Id.* at ¶ 69.

## IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv., Inc.*, No. 1:10-cv-4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). Here, the Parties acted responsibly in reaching an early Settlement. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to

14

assess the potential risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623,

04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citation

omitted) (internal quotation marks omitted).   Moreover, preliminary approval requires only an

"initial evaluation" of the fairness of the proposed settlement on the basis of written submissions

and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing

*Newberg* § 11.25).   To grant preliminary approval, the court need only find that there is

"'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to

its fairness." *In re Traffic Exec. Ass'n E.R.R.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* §

11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose

grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the

court should permit notice of the settlement to be sent to class members (quoting *Manual for*

*Complex Litigation (Third)* § 30.41)).[7]

   "Fairness is determined upon review of both the terms of the settlement agreement and

the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D.

174, 184 (W.D.N.Y. 2005).   "A presumption of fairness, adequacy, and reasonableness may

attach to a class settlement reached in arm's-length negotiations between experienced, capable

counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation

marks omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th

Cir. 1982) (recognizing that courts rely on adversarial nature of litigated FLSA cases resulting in

settlement to indicate fairness).   "Absent fraud or collusion, [courts] should be hesitant to

substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI*

---

[7] Courts often grant preliminary settlement approval without requiring a hearing or a court
appearance. *See, e.g., Palacio* 2012 WL 1058409, at *2 (granting preliminary approval based on
plaintiffs' memorandum of law, attorney declaration, and exhibits).

*Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05

Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27,

2007).

 Preliminary approval is the first step in the settlement process.  It simply allows notice to

issue and for Class Members to object, opt out of, or opt-in to the settlement.  After the notice

period, the Court will be able to evaluate the settlement with the benefit of Class Members'

input.

  **A.** **<u>The Settlement is Fair, Reasonable, and Adequate</u>.**

 In evaluating a class action settlement, courts in the Second Circuit analyze the nine

factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated*

*on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The

Court's task on a motion for preliminary approval is merely to perform an "initial evaluation,"

*Newberg* § 11.25, or to determine whether the settlement falls within the range of possible final

approval, or "the range of reasonableness." *Id*. at § 11.26.  However, it is generally useful for the

Court to consider the criteria on which it will ultimately judge the settlement.

 The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  Here,

each *Grinnell* factor weighs not only in favor of granting preliminary approval of the Settlement Agreement, but also in favor of granting final approval.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable Settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Further litigation here would cause additional expense and delay. Notwithstanding the significant amount of data and information exchanged between the Parties, it is indisputable that further extensive discovery and briefing would have been required on class certification issues and on liability damages issues. In addition, the Parties likely would have filed cross-motions for summary judgment. If the Court denied the motions, a fact-intensive trial would then be necessary. A trial would be lengthy and complex and would consume tremendous time and resources for both the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. This Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Accordingly, the first *Grinnell* factor weighs in favor of approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the Settlement and its terms has not yet issued to the class. Thus, this factor should be reviewed after Notice issues and Class Members are given the opportunity to object, opt out, or opt-in. Although it is premature to analyze this factor, it is notable that at this early

17

stage in the process, all Named Plaintiffs have expressed their approval of the Settlement by signing the Settlement Agreement.  Werman Decl., Ex. A, attach. 1 (Settlement Agreement); Gilbert Decl., Ex. B at ¶ 26.   In addition, the eight Consent Plaintiffs also support the Settlement.  *Id.*  Given the Named Plaintiffs' and Consent Plaintiffs' positive reactions, this factor also weighs in favor of approval.

### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The Parties have completed enough informal discovery to recommend this Settlement.  In determining whether the Parties acted responsibly under *Grinnell*, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537 (internal quotation marks omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 9 (alteration in original) (internal quotation marks omitted).  The Parties' discovery here meets this standard.

Plaintiffs' Counsel conducted in-depth interviews with approximately 35 Plaintiffs, Consent Plaintiffs or Opt-Ins and other Class Members who worked as CAs in various Merrill Lynch branch offices across the country, obtained and reviewed thousands of pages of Defendants' documents, and reviewed *millions* of lines of electronic data in order to assess the strengths and weaknesses of the case. Werman Decl., Ex A, ¶¶ 17-18; Gilbert Decl., Ex. B at ¶¶ 21-22.  Defendants produced to Plaintiffs Merrill Lynch's overtime, time off, timekeeping, and CA compensation and CA supplemental compensation policies.  Most important, Defendants produced data allowing Plaintiffs to evaluate the claims, including but not limited to timekeeping records, payroll records, wage information and employee data.  Werman Decl., Ex. A, ¶ 19.  In

the months leading up to the mediation of this matter, further discovery and data was provided to Plaintiffs' Counsel to assess the claims.

Indeed, courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the discovery the Parties accomplished in this case. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange and no depositions were taken); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *Diaz*, 2010 WL 5507912, at *5 (granting final approval of pre-suit class settlement, where informal discovery consisted of pre-suit document exchange); *McMahon v. Oliver Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *5 (granting final approval where parties conducted informal discovery but no depositions); *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010) (approving settlement where parties conducted informal discovery but no depositions).

The thoroughness of the discovery performed in this case favors preliminary approval under this *Grinnell* factor. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding, in case at similar stage of discovery, that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims."); *Diaz*, 2010 WL 2945556, at *3 (finding, in case settled prior to filing of complaint, that "Class Counsel did substantial work identifying, investigating, and settling Plaintiffs' and the class members' claims."); *McMahon*, 2010 WL 2399328, at *5 (finding that the parties' "efficient, informal exchange of information" was

enough discovery to recommend settlement approval); *Frank*, 228 F.R.D. at 185 (approving

settlement of case "in the relatively early stages of discovery" where parties had exchanged

extensive information pertaining to the identities of class members and to Defendant's time and

pay practices and where counsels' negotiations, while "cooperative," had "been in no way

collusive").

**4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believe their case is strong, it is subject to the same considerable risk

that any case is.  "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*,

171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to

avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*,

304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ.

8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing

liability and damages, the court "must only weigh the likelihood of success by the plaintiff class

against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal

quotation marks omitted).

A trial on the merits would involve significant risks for the Parties as to both liability and

damages.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of

liability issues, the outcome of the trial, and the inevitable appeals process are inherently

uncertain in terms of outcome and duration.  The proposed Settlement alleviates these

uncertainties and, therefore, favors preliminary approval under these *Grinnell* factors.

**5.      Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining class certification is also present.  The Court has not certified the Rule 23 Classes yet, and the Parties anticipate that such a determination would be reached only after further discovery and briefing.  Risk, expense, and delay permeate such processes.  This *Grinnell* factor favors preliminary approval because the Settlement eliminates the risk and delay inherent in this process.

**6.      Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7).**

There is no evidence here that Defendants could not withstand a greater judgment. Werman Decl., Ex. A at ¶ 39.  In recent years, however, even some of the largest financial institutions have failed, leaving the class with no recourse.  *See, e.g.*, *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 446-51 (E.D.N.Y. 2010) (finding plaintiffs' wage and hour claims against Washington Mutual's successors in interest to be barred).  Even though it is possible that Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Therefore, this *Grinnell* factor is neutral and does not preclude the Court from granting preliminary approval.

**7.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

Defendants have agreed to settle this case for a substantial amount, $12,000,000.  The settlement amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained both collective and class action certification,

overcame motions to decertify any class or collective action, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). Here, the Settlement provides more than "a fraction of the potential recovery." Rather, the Settlement represents a substantial recovery for Class Members, particularly in light of the litigation risks identified above.

Here, Rule 23 and FLSA Class Members are projected to receive the following amounts, even net of attorneys' fees and administration costs:

| Range of Total Owed Wages (100% Distribution) | | # of Class Members | % of Class Members |
|---|---|---|---|
| $ - | $ 250.00 | 3,185 | 26.49% |
| $ 250.00 | $ 500.00 | 1,714 | 14.26% |
| $ 500.00 | $ 750.00 | 1,344 | 11.18% |
| $ 750.00 | $ 1,000.00 | 1,071 | 8.91% |
| $ 1,000.00 | $ 1,500.00 | 3,784 | 31.47% |
| $ 1,500.00 | $ 2,000.00 | 314 | 2.61% |
| $ 2,000.00 | $ 2,500.00 | 611 | 5.08% |

Werman Decl., Ex. A at ¶ 32.  Balancing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is not only substantial, but is clearly reasonable.

For all the foregoing reasons, the *Grinnell* factors support preliminary approval, and the Court should conclude that the Settlement is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), and grant preliminary approval.

## V.    CERTIFICATION OF THE RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE.

For settlement purposes, Plaintiffs seek to certify four Rule 23 Classes under Federal Rule of Civil Procedure 23(b)(3).  Specifically, Plaintiffs respectfully request that the Court certify the four Rule 23 Classes as defined above for purposes of effectuating the Settlement.  As discussed below, the Rule 23 Classes meet all of the certification requirements for class certification for settlement purposes, and Defendants do not oppose provisional certification for settlement purposes only.  Werman Decl., Ex. A, attach. 1 (Settlement Agreement); *see also County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295

(2d Cir. 1990); *Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); .

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreements, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *Dorn*, 2011 WL 382200, at *1 (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating

class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)) (internal quotation marks omitted).

### A.    **Numerosity**

Plaintiffs easily satisfy this requirement because there are in excess of 12,000 class members. Werman Decl., Ex. A at ¶ 31. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### B.    **Commonality**

The proposed Rule 23 Classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves multiple common issues. Plaintiffs and Class Members bring identical claims that Defendants failed to pay them overtime for all time worked and paid overtime at an incorrect regular rate of pay as a result of Defendants' alleged failure to include supplemental compensation in CAs' regular rate of pay for overtime pay purposes. Plaintiffs' state law claims all raise the same issues. Additionally, in New York, Plaintiffs also raise the issue of whether

Defendants owe certain spread of hours compensation and, in California, whether Plaintiffs received all meal breaks to which they may have been entitled. *See Clark*, 2010 WL 1948198, at *3 (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

### C.   Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)) (internal quotation marks omitted).

Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims. Accordingly, Plaintiffs satisfy the typicality requirement. *See Dorn*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims for overtime pay . . . arise from the same factual and legal

circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at

*4 (same); *Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality

requirement where "all class members . . . allege that Kodak failed to pay them . . . overtime

wages for hours worked in excess of forty per week during the relevant time period").

### D. Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

that the named representative will 'have an interest in vigorously pursuing the claims of the

class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v.*

*Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(alteration in original) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).

"[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim

of representative status." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2007 WL 1580080, at *6

(E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y.

1998)) (internal quotation marks omitted).  Plaintiffs meet the adequacy requirement because

there is no evidence that the Named Plaintiffs have interests that are antagonistic to or at odds

with those of the Rule 23 Class Members. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595,

2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (adequacy met where there was no evidence

that named plaintiffs' and class members' interests were at odds); *McMahon*, 2010 WL 2399328,

at *2 (same).

Plaintiffs' Counsel also meets the adequacy requirement of Rule 23(a)(4).  Both Stowell

& Friedman, Ltd. and Werman Law Office, P.C. have substantial experience prosecuting and

settling employment class actions.  Plaintiffs' Counsel has been designated class counsel in

numerous class actions.   Werman Decl., Ex. A at ¶¶ 5-6; Gilbert Decl., Ex. B at ¶¶ 8-9; *see also*

*Schmidt v. Smith & Wollensky*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) ("[T]his court notes that

[Douglas Werman is] qualified to serve as class counsel in the pending litigation because [he is

a] highly experienced attorney[] and [has] acted as class counsel in similar actions in federal and

state courts.").

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also

that they "predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 623 (1997).  That Plaintiffs easily meet the Rule 23(a) criteria is a strong

indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d

Cir. 1986) ("[S]atisfaction of the typicality requirement of Rule 23(a) … goes a long way toward

satisfying the Rule 23(b)(3) requirement of commonality.").

### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v.

A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007) (internal quotation marks

omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis,

even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227

F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280

F.3d 124, 139 (2d Cir. 2001)).  Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'"  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (alteration in original) (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 138).  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement is "more demanding than the Rule 23(a) commonality inquiry and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, the Rule 23 Class Members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by failing to pay them all earned overtime wages – predominates over any factual or legal variations among Class Members.  *See Clark*, 2009 WL 6615729, at *5 (finding common factual allegations and common legal theory to predominate over factual and legal variations among class members in wage and hour misclassification case); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) ("Plaintiffs have introduced sufficient proof that Defendant engaged in a common practice to deny employees overtime pay. [T]his issue predominates over any individual calculations of overtime wages …").

## 2.     A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to

29

overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks omitted)).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[8]

Here, the Named Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions, and the Named Plaintiffs are unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.  Werman Decl., Ex A at ¶ 35.  Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction, the policies and practices emanated from this jurisdiction and Defendants' headquarters are based in this jurisdiction.

Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.  *See Capsolas*, 2012 WL 1656920, at *2; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. at 152, 161, 164

---

[8] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." (citation omitted)); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D. 69, 199 (E.D.N.Y. 2008) (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 140).

(S.D.N.Y. 2008).  Accordingly, a class action is the most suitable mechanism to fairly,

adequately, and efficiently resolve the Named Plaintiffs' and Class Members' claims.

## VI.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Jennifer Schoen Gilbert, Suzanne E. Bish and George Robot of Stowell & Friedman, Ltd.

and Douglas M. Werman of Werman Law Office, P.C. should be appointed as Class Counsel.

Rule 23(g), which governs the standards and framework for appointing class counsel for a

certified class, sets forth four criteria the district court must consider in evaluating the adequacy

of proposed counsel: (1) "the work counsel has done in identifying or investigating potential

claims in the action;" (2) "counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the

applicable law; and" (4) "the resources that counsel will commit to representing the class."  Fed.

R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory

Committee has noted that "[n]o single factor should necessarily be determinative in a given

case."  Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiffs' Counsel meets all of these criteria.  Plaintiffs' Counsel has done substantial

work identifying, investigating, prosecuting, and settling the Class Members' claims.  Gilbert

Decl., Ex. B. at ¶¶ 21-25; Werman Decl., Ex. A at ¶¶ 17-38.  Additionally, Plaintiffs' Counsel

have substantial experience prosecuting and settling employment class actions, the lawyers

assigned to this matter are well-versed in class action and wage and hour law and are well-

qualified to represent the class.   Gilbert Decl., Ex. B. at ¶¶ 5-6, 8-14;  Werman Decl., Ex. A at

¶¶ 3-16.   Other courts have found Plaintiffs' Counsel to be adequate class counsel in wage and

hour class actions (Werman Decl., Ex. A at ¶ 6) and other employment law class actions.  Gilbert

Decl., Ex. B at ¶¶ 8-9.

## VII.   THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

The content of the Proposed Notices, which are attached to the Werman Decl. as Exhibits

2 and 3, fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to

Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort. The notice must
> clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the
>         member so desires;
> (v)     that the court will exclude from the class any member who requests
>         exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements.  Additionally, they

describe the terms of the Settlement, inform the class about the allocation of attorneys' fees and

costs, Service Awards, and provide specific information regarding the date, time, and place of

the Fairness Hearing and final approval hearing.  Courts have approved class notices even when

they provided only general information about a settlement.  *See In re Michael Milken & Assocs.*

*Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) ("Normally, settlement notices need only describe

the terms of the settlement generally."); *see also Johnson*, 2011 WL 1872405, at *3.  The

detailed information in the Proposed Notices far exceeds this bare minimum and fully complies

with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Proposed Notices will be mailed by the Settlement Claims Administrator to the last known address of each Class Member within 45 days of preliminary approval. Werman Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶ 47. The Settlement Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing. *Id.* at ¶ 49.

The Proposed Rule 23 Notice contains information about how to exclude oneself or object to the Settlement. Werman Decl., Ex. A, attach. 2. Rule 23 Class Members will have 75 days from the date of mailing to submit opt-out requests or to comment on or object to the Settlement. Werman Decl., Ex. A, attach. 1 at ¶ 50. No Rule 23 Class Member will be required to complete a claim form to participate in the Settlement. *Id.* at ¶ 54.

The Proposed FLSA Notice contains information about how to return an Opt-In Statement to participate in the Settlement and receive a Settlement payment. Werman Decl., Ex. A, attach. 3. FLSA Class Members will have 75 days from the date of mailing to submit an Opt-In Statement. Werman Decl., Ex. A, attach. 1 (Settlement Agreement) at ¶ 55.

The Parties were unable to agree on the scope of Class Member contact information to be provided to Class Counsel as part of the settlement administration process. Plaintiffs claim both Class Counsel and the Settlement Claims Administrator should have access to certain Class Member information (e.g., Class Members' names; social security numbers; last known addresses). Defendants contend that Plaintiffs should not have access to this information and that it should only be provided to the Settlement Claims Administrator. The Parties will be providing a joint letter to the Court regarding this issue within the next 14 days and ask that the Court enter an Order governing the scope of Class Member contact information to be produced by Defendants to Class Counsel.

## VIII.   THE COURT SHOULD APPROVE THE PARTIES' FLSA SETTLEMENT

The procedures for settling a § 216(b) FLSA collective action are different from the requirements for settling a class action under Rule 23 of the Federal Rules of Civil Procedure. *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir.1996); *Bayles v. Am. Response of Colo., Inc.*, 950 F. Supp. 1053, 1067 (D. Colo. 1996) ("Despite the unpredictability of an ad hoc approach, I see no basis to conclude that the paradigm of Rule 23 can be engrafted upon § 216(b)."). The three step fairness process described above for settling Rule 23 class actions, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), therefore, does not apply to FLSA collective actions and the parties to a FLSA settlement are not required to "certify" a "settlement class." Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *DeMunecas v. bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010).

### A.    The Proposed Settlement Is the Product of Contested Litigation

For the reasons detailed above, this Court should readily conclude that this Settlement is also a reasonable resolution of a *bona fide* dispute in contested litigation.

**B.      The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A Bona Fide Dispute Between The Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues.  The first issue is confirming the existence of a *bona fide* dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement.  As explained above, the Court should readily conclude that both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

When Plaintiffs file their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Preliminary Approval of Settlement and enter the Proposed Order.


Dated: February 15, 2013                    Respectfully submitted,


                              By:  s/ Jennifer Schoen Gilbert

                                   Jennifer S. Gilbert,
                                   New York Bar No. 4971677
                                   **STOWELL & FRIEDMAN, LTD.**
                                   303 W. Madison, Suite 2600
                                   Chicago, Illinois  60606
                                   312-431-0888 (phone); 312-431-0228 (fax)
                                   JGilbert@sfltd.com

                                   Douglas M. Werman
                                   **WERMAN LAW OFFICE, P.C.**
                                   77 West Washington, Suite 1402
                                   Chicago, IL 60602
                                   312-419-1008 (phone); 312-419-1025 (fax)
                                   DWerman@flsalaw.com
                                   (*pro hac vice*)

                                   **Attorneys for Plaintiffs and the Putative Rule 23
                                   Class Members and Collective Action Class
                                   Members**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion and Memorandum of Law has been served upon the following listed persons via the Court's ECF system on February 15, 2013:

Stephen E. Brown
Janell M. Ahnert
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
Birmingham, AL 35023

Katharine Huth Parker
Proskauer Rose LLP
11 Times Square
New York, NY 10036

By:   s/ Jennifer Schoen Gilbert
      Jennifer Schoen Gilbert