**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NANCY MARTIGNAGO, AMY FERGUSON, CINDY SELLERS, CATERINA DERKASCH, JUNE PARMAN-FLAX and ROBIN GRANDUSKY, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BANK OF AMERICA CORPORATION,<br><br>      Defendants. | Case No. 11-cv-03923-PGG<br><br>**Judge Paul G. Gardephe** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10 3 13

**ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION
OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

Plaintiffs Nancy Martignago, Amy Ferguson, Cindy Sellers, Caterina Derkasch, June

Parman-Flax and Robin Grandusky (collectively "Plaintiffs") are individuals who worked as

Client Associates ("CAs") for Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce,

Fenner & Smith Incorporated ("Merrill Lynch"), and Bank of America Corporation (collectively

"Defendants").  On June 9, 2011, Plaintiff Martignago filed a collective action lawsuit in the

United States District Court for the Southern District of New York, Case No. 11-cv-03923-PGG,

captioned *Martignago, et al. v. Merrill Lynch & Co., Inc., et al.*, on behalf of current and former

CAs alleging Merrill Lynch violated the FLSA by failing to pay CAs overtime wages for the

time they worked as alleged in the Second Amended Complaint.  Dkt. No. 1. On August 25,

2011, Plaintiff Martignago filed an Amended Complaint adding Plaintiffs Ferguson and Sellers

as Named Plaintiffs.[1] Dkt. No. 24.  On February 10, 2012, Plaintiffs Martignago, Ferguson and

Sellers filed a Second Amended Complaint adding Derkasch, Parman-Flax and Grandusky as

Named Plaintiffs and Federal Rule of Civil Procedure 23 ("Rule 23") class action claims under

New York, California, Maryland and Washington wage and hour laws related to overtime pay.

Dkt. No. 51.  On February 24, 2012, Defendants filed an Answer to the Second Amended

Complaint.  Dkt. No. 52.

After exchanging informal discovery to enable Plaintiffs to calculate damages and

undertaking extensive negotiations, the parties reached a Settlement totaling $12,000,000

("Settlement Fund").  The parties reached this Settlement after a formal mediation under the

supervision of an experienced employment law mediator, David Rotman, Esq.  Although the

Parties made significant progress, the arm's-length negotiations were highly contested and

did not result in a settlement at the mediation.  Following the mediation, the parties reached

an agreement on the Settlement amount and several other key terms.  During the next

several months, the parties negotiated the remaining terms of the settlement, which were

memorialized in a formal Settlement Agreement ("Settlement Agreement") and ultimately

presented to the Court.

On April 30, 2013, this Court entered an Order preliminarily approving the

settlement on behalf of the class set forth therein (the "Class" or the "Class Members"),

conditionally certifying the settlement class, appointing Werman Law Office. P.C. and

Stowell & Friedman Ltd., as Class Counsel, and authorizing Notice to all Class Members.

Dkt. No. 76.

---

[1] On September 28, 2011, the Court entered a Joint Stipulation to Dismiss Plaintiff Deeney from
the Collective Action.

2

On June 14, 2013, the Settlement Claims Administrator sent Court-approved notices via U.S. Mail to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in the four states where Rule 23 claims were brought, and of Class Counsel's intention to seek up to twenty-five percent of the Settlement Fund for attorneys' fees, plus their out-of-pocket expenses.

On September 24, 2013, Class Counsel filed with the Court a list of all potential FLSA Class Members who timely filed Opt-In Statements (Dkt. No. 81, Ex. A) and a list of persons who timely excluded themselves from the Rule 23 Classes (Dkt. No. 81, Ex. B), which complies with paragraphs 53 and 60 the Parties' Settlement Agreement. On October 2, 2013, Class Counsel filed a corrected list identifying all FLSA Class Members. A total of 4,553 persons filed timely FLSA Opt-In Statements, no Class Members objected to the settlement, and 11 persons opted out of the Settlement. Dkt. No. 81 and Dkt No. 87.

On September 26, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement and Service Awards ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Class Counsel's Request for Award of Fees and Expenses ("Motion for Attorneys' Fees and Expenses"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, expenses, or service awards.

The Court held a Fairness Hearing on October 3, 2013. No Class Member objected to the Settlement Agreement at the hearing.

Having considered the Motion for Final Approval and the Motion for Class Counsel's Fees and Expenses, and the supporting declarations, the oral argument presented at the October 3, 2013 Fairness Hearing, and the complete record in this matter, for the

3

reasons set forth therein and stated on the record at the October 3, 2013 Fairness Hearing,

and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

<u>**CERTIFICATION OF THE SETTLEMENT CLASS**</u>

1.     The Court certifies the following sub-classes under Federal Rule of Civil

Procedure 23(e), for settlement purposes (the "Rule 23 Class Members"):

> a.     California Sub-Class:  The California Sub-Class consists of all persons
> who were employed by Defendants as CAs at any time from February 1,
> 2008 through and including December 31, 2012 ("California Rule 23
> Class");
>
> b.     Maryland Sub-Class:  The Maryland Sub-Class consists of all persons who
> were employed by Defendants as CAs at any time from February 1, 2009
> through and including December 31, 2012 ("Maryland Rule 23 Class");
>
> c.     New York Sub-Class:  The New York Sub-Class consists of all persons
> who were employed by Defendants as CAs at any time from February 1,
> 2006 through and including December 31, 2012 ("New York Rule 23
> Class"); and
>
> d.     Washington Sub-Class:  The Washington Sub-Class consists of all persons
> who were employed by Defendants as CAs at any time from February 1,
> 2009 through and including December 31, 2012 ("Washington Rule 23
> Class").

2.     Plaintiffs meet all of the requirements for class certification under Federal

Rule of Civil Procedure 23(a) and (b)(3).

3.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are

approximately 1,682 California Rule 23 Class Members, 194 Maryland Rule 23 Class

Members, 2,294 New York Class Members, and 197 Washington Class Members and, thus,

joinder is impracticable.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483

(2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

4

4.      The proposed Rule 23 Classes also satisfy Federal Rule of Civil Procedure 23(a)(2), the commonality requirement.  The Class Representatives and Class Members bring identical claims that Defendants violated the overtime provisions of the FLSA and Rule 23 state laws by compelling CAs to work overtime that was "off the clock" and/or by failing to properly compute overtime wages for CAs who were paid for overtime.  Additionally, in New York, Plaintiffs raise the issue of whether Defendants owe certain spread of hours compensation and, in California, whether Plaintiffs received all meal breaks to which they may have been entitled. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, et al., 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

5.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims. *See Morris*, 859 F. Supp. 2d at 616 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the Class Members' claims").

6.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Class Representatives and the Class Members' interests are at odds. *See Morris*, 859 F. Supp. 2d at 616 (finding adequacy requirement met where there was no

evidence that plaintiffs' and class members' interests were at odds); *Johnson v. Brennan*,

No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (same).

       7.      Werman Law Office, P.C. has substantial experience prosecuting and settling

wage and hour class actions, *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 328 (N.D. Ill.

2010) ("[Douglas M. Werman] is qualified to serve as class counsel in the pending litigation

because [he is a] highly experienced attorney[] and [has] acted as class counsel in similar actions

in federal and state courts."). *See e.g., Rusin v. Chicago Tribune,* Case No. 12 C 1135, Dkt. No.

30 (N.D. Ill. Feb. 5, 2013); *Peraza v. Dominick's Finer Foods, LLC*, Case No. 11 C 8390, Dkt.

No. 45 (N.D. Ill. Nov. 20, 2012); *Ortiz v. Manpower*, Case No. 12 C 5248, Dkt. No. 63 (N.D. Ill.

Aug. 21, 2012) (class comprising over 85,000 employees); *Romo v. Manpower*, Case No. 09 C

3429, Dkt. No. 211 (N.D. Ill. Jan. 18, 2012); *Haschak v. Fox & Hound Rest. Grp.*, Case No. 10 C

8023, 2012 U.S. Dist. 162476, at * 2 (N.D. Ill. Nov. 14, 2012); *Schaefer v. Walker Bros. Enters.,*

*Inc.*, 10 6366, 2012 U.S. Dist. LEXIS 65432, at *4 (N.D. Ill. May 7, 2012); *Kernats v. Comcast*

*Corp. Inc.*, Case Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct.

20, 2010); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill. 2010); *Driver*, No. 06 C

6149, 2012 U.S. Dist. LEXIS 27659, at *15 (N.D. Ill. Mar. 2, 2012) (decertification denied);

*Arrez v. Kelly Services, Inc.* No. 07 C 1289 (N.D. Ill.) (class action for unpaid wages for over

95,000 employees); *Polk v. Adecco*, No 06 CH 13405 (Cook County, Il.) (class action for owed

pay for over 36,000 employees); *Hardaway v. Employbridge of Dallas, et al.*, No. 11 C 3200

(N.D. Ill.) (IWPCA class action for owed overtime pay for over 7,000 employees); *Williams v.*

*Volt*, No. 10 C 3927 (N.D. Ill.) (IWPCA class action for owed pay for over 15,000 employees);

*Rosales v. Randstad*, No. 09 C 1706 (N.D. Ill.) (IWPCA class action for owed vacation pay for

over 15,000 employees); and *Munno v. Guardsmark*, 08 CH 14354 (Cir. Ct. Cook County)

(IWPCA class action for over 2,000 employees).

      8.      Likewise, Stowell & Friedman has represented clients and prosecuted claims

on behalf of employees working in the securities industry for over two decades. Attorneys

at Stowell & Friedman, including those named as Class Counsel in this case, have been

appointed by federal courts as class counsel in employment cases. Over the years, Stowell

& Friedman attorneys have successfully prosecuted employment civil rights claims and have

been appointed by various courts as class counsel. The Firm has successfully represented

thousands of plaintiffs in civil rights class actions and multiple plaintiff lawsuits. *See, e.g.,*

*McReynolds, et al. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 05 C 6583 (N.D. Ill.)

($160 million discrimination class action settlement and programmatic relief for nationwide

class of African American Financial Advisors); *Cremin v. Merrill Lynch*, 328 F. Supp. 2d

865, 866 (N.D. Ill. 2004) (District court stated of nationwide gender discrimination class

action: "This lawsuit is a good example of the benefits of class action litigation;" settlement

ultimately yielded recovery of over $225 million); *Biondo v. City of Chicago*, 382 F.3d 680

(7th Cir. 2004) (Stowell & Friedman proved class-wide liability at trial of class promotion

claims and recovered substantial back pay awards, promotions and pension verdicts in three

separate pilot jury trials, resulting in favorable settlements for 100 class members and

recovery of a common fund for a subclass.); *Martens v. Smith Barney, Inc.*, 181 FRD 243,

259 (S.D.N.Y. 1998) (District court in approving class certification and settlement: "Class

counsel also have proven themselves able thus far in this case with, for example, their

discovery efforts ... their motion practice to date ... and their settlement negotiations;"

settlement ultimately yielded over $100 million to class); *Roche v. City of Chicago*, 24 F.3d

7

882 (7th Cir. 1994) (Seventh Circuit upheld summary judgment in the plaintiffs' favor,

finding unlawful the City's mandatory retirement of exempt rank fire officials. The Firm

then represented approximately sixty additional exempt rank police and fire officials in

*Cunningham v. City of Chicago*, No. 94 c 2936 (N.D. Ill) and *Jankowski v. City of Chicago*

No. 95 c 0036 (N.D. Ill)); *Carey, et al. v. Chicago Housing Authority*, No. 87 c 6998

("Plaintiffs' attorneys are also entitled to such an upward adjustment of their lodestar on

other grounds. ... The court finds this to be just such an exceptional case."). Stowell &

Friedman successfully even tried to verdict a case for unpaid wages for the Cook County

Bomb Squad for time spent "on call." *Dornbos v. County of Cook*, No. 88-cv-04055 (N.D.

Ill.).

> 9.     Plaintiffs also satisfy Rule 23(b)(3). Plaintiffs' common factual allegations
and a common legal theory – that Defendants violated federal and state wage and hour laws
by failing to pay them for premium overtime hours – predominate over any factual or legal
variations among class members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006
WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that
Defendants engaged in a common practice to deny employees overtime pay," and "this issue
predominates over any individual calculations of overtime wages").

> 10.     Class adjudication of this case is superior to individual adjudication because
it will conserve judicial resources and is more efficient for class members, particularly those
who lack the resources to bring their claims individually. *See Reyes v. Altamarea Grp.,*
*LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Class
Representatives and Class Members have limited financial resources with which to
prosecute individual actions. Concentrating the litigation in this Court is desirable because

some of the allegedly wrongful conduct occurred within its jurisdiction.  Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

**APPROVAL OF THE SETTLEMENT AGREEMENT**

11.     The Court hereby grants the Motion for Final Approval and finally approves the Settlement as set forth in the Settlement Agreement.

12.     Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts consider whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

13.     Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL

2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ.
8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).

14.     A "presumption of fairness, adequacy and reasonableness may attach to a
class settlement reached in arm's-length negotiations between experienced, capable counsel
after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for
Complex Litigation, Third*, § 30.42 (1995)); *see also D 'Amato,* 236 F.3d at 85. "Absent
fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the
parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761,
2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694, 700 (E.D. Mo. 2002).

### Procedural Fairness

15.     The Settlement Agreement is procedurally fair, reasonable, adequate, and not
a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at *4.  The
Settlement Agreement was reached after the parties had conducted a thorough investigation
and evaluated the claims and defenses, and after arm's-length negotiations between the
parties.

16.     Class Counsel examined Defendants' data showing the number of Class
Members in relevant job titles, salaries, commission pay, weeks worked, location of
employment, and branch hours information.

17.     On August 28, 2012, the parties engaged in a full day mediation session in San
Francisco, California with David Rotman, Esq., a well-respected and experienced mediator in
wage and hour law. The arm's-length negotiations were highly contested and did not result in a

settlement at the mediation. During the next five months, the parties negotiated the terms of the settlement that were memorialized in the Settlement Agreement. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes*, 2011 WL 4599822, at *4.

18.    In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The Parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

**Substantive Fairness**

19.    The Settlement Agreement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3)

11

the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

20.     Litigation through trial would be complex, expensive and long.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

21.     The Class Members' reaction to the settlement was positive.  The Notices included an explanation of the allocation formula and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so.  No Class Member objected to the settlement, and only 11 of the 4,361 Rule 23 Class Members opted out. This favorable response demonstrates that the class approves of the Settlement and supports final approval.  "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion); *see also Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

22.     The Parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *McMahon v. Olivier Cheng Catering and Events*, No 08 CV 8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (Gardephe, J.) (internal quotation marks omitted) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. The Parties' participation in a daylong mediation and subsequent negotiations through the mediator and with each other allowed them to further explore the claims and defenses. Accordingly, the third *Grinnell* factor weighs in favor of final approval.

23.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks to class certification and as to both liability and damages, including overcoming Defendants' defense that the Rule 23 Class claims could not be certified due to individualized differences between Class Members and proving willfulness in order to obtain a third year of liability and damages. The proposed Settlement Agreement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

24.     The risk of obtaining collective and class certification and maintaining both through trial is also present.  Contested collective and class certification motions would likely require extensive discovery and briefing.  If the Court did authorize notice to the potential FLSA opt-ins, Defendants would likely challenge that determination by seeking decertification at a later date, after the close of discovery.  If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing.  Settlement eliminates the risk, expense, and delay inherent in the litigation process.  Thus, the sixth *Grinnell* factor weighs in favor of final approval.

25.     Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted).  Accordingly, this factor is neutral and does not preclude the Court from approving the Settlement Agreement.

26.     The substantial amount of the Settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The eighth and ninth *Grinnell* factors weigh in favor of final approval.

14

**APPROVAL OF THE FLSA SETTLEMENT**

27.    The Court hereby approves the FLSA Settlement Agreement.

28.    Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

29.    Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6.

30.    In this case, the Settlement Agreement was the result of vigorous back and forth arm's-length negotiations. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in collective and class action law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

**THE PARTIES' NOTICE PROGRAM**

31.    Pursuant to the Preliminary Approval Order, the Rule 23 and FLSA Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located).

15

The Court finds that the Rule 23 and FLSA Notices fairly and adequately advised Class
Members of the terms of the Settlement Agreement, as well as the right of Rule 23 Class
Members to opt-out of or to object to the settlement, and to appear at the Fairness Hearing
conducted on October 3, 2013.  Class Members were provided with the best notice
practicable under the circumstances.

32.     The Court further finds that the Notices and their distribution comported
with all constitutional requirements, including those of due process.

33.     The Court confirms Kurtzman Carson Consultants, LLC as the Settlement
Claims Administrator.

## AWARD OF FEES AND EXPENSES TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

34.     On April 30, 2013, the Court appointed Werman Law Office P.C. and
Stowell & Friedman, Ltd. as Class Counsel because they met all of the requirements of
Federal Rule of Civil Procedure 23(g).  Dkt. No. 76; *see Damassia*, 250 F.R.D. at 165 (Rule
23(g) requires the court to consider "the work counsel has done in identifying or
investigating potential claims in the action, . . . counsel's experience in handling class
actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's
knowledge of the applicable law, and . . . the resources counsel will commit to representing
the class" (internal quotation marks omitted)).

35.     Class Counsel are experienced employment lawyers with good reputations
among the employment law bar. *See supra* ¶¶ 7 8.

36.     The work that Class Counsel has performed in litigating and settling this case
demonstrates their commitment to the class and to representing the class's interests.  Class
Counsel has committed substantial resources to prosecuting this case.

37.     The Court hereby grants Plaintiffs' Motion for Class Counsel's Fees and
Expenses and awards Class Counsel $3,000,000 which is twenty-five percent of the
Settlement Fund.

38.     The trend in this Circuit is to use the percentage of the fund method to
compensate attorneys in common fund cases like this one. *McDaniel v. County of
Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*,
2011 WL 4599822, at *7.

39.     Although the Court has discretion to award attorneys' fees based on the
lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage
and hour class action lawsuits, public policy favors a common fund attorneys' fee award.
*See Sewell*, 2012 WL 1320124, at *13; *Reyes*, 2011 WL 4599822, at *7.  Fee awards in
wage and hour cases are meant to "encourage members of the bar to provide legal services
to those whose wage claims might otherwise be too small to justify the retention of able,
legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan.
7, 2010).  The FLSA and Rule 23 wage and hour statutes are remedial statutes, the purposes
of which are served by adequately compensating attorneys who protect wage and hour
rights. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.

40.     Where relatively small claims can only be prosecuted through aggregate
litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill
the private attorney general role must be adequately compensated for their efforts. *Reyes*,
2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.  If not, wage and hour abuses would
go without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011
WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal

17

Case 1:11-cv-03923-PGG   Document 89-1   Filed 10/02/13   Page 18 of 22

fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41.     Class Counsel's request for twenty-five percent of the Settlement Fund is reasonable and is, in fact, below the norm "class litigation in this circuit." *See Silva v. Little Fish Corp.*, No. 10 CV 7801, 2012 WL 2458214, at *2 (S.D.NY, May 1, 2012) (Gardephe, J.) (awarding class counsel one-third of the settlement fund); *McMahon* 2010 WL 2399328, at *7 (same); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same).

42.     Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports class counsel's request for 25% of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at *8 (citation omitted) (quoting *Arbor Hill*, 522 F.3d 182, 191 (2d Cir. 2008)).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports an award of one- third of the fund. *Reyes*, 2011 WL 4599822, at *8; *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

43.     In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for thirty-three percent of a class-wide recovery and that they would pay Class Counsel thirty-three percent of any individual recovery.  This also provides support for Class Counsel's request for twenty-five percent of the Settlement Fund, inclusive of $29,967.61 in expenses.  Courts typically allow counsel to recover their reasonable out-of- pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).  Here, Class Counsel's

unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the Class Members.

44.     The attorneys' fee awarded to Class Counsel includes reimbursement of litigation costs and expenses, and shall be paid from the Settlement Fund.

45.     No Class Member objected to Class Counsel's request for twenty-five percent of the Settlement Fund, which also provides support for Class Counsel's fee request.

46.     All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000), weigh in favor of the requested fee award.

47.     Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable. Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See Beckman v. Keybank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at *14 (S.D.N.Y. Apr. 29, 2013) (awarding multiplier of approximately 6.3); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).   Here, the lodestar multiple sought by Class Counsel falls within the range granted by this Court. *See McMahon,* 2012 ML 2399328 at *8 ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar").

19

48.     The lodestar multiplier Class Counsel seeks is also reasonable because it will

diminish over time. *Parker v. Jekyll & Hyde Entm 't Holdings, LLC*, No. 08 Civ. 7670,

2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend

significant effort in the future implementing the complex procedure agreed upon for

collecting and distributing the settlement funds, the multiplier will diminish over time").

"[W]here 'class counsel will be required to spend significant additional time on this

litigation in connection with implementing and monitoring the settlement, the multiplier will

actually be significantly lower' because the award includes not only time spent prior to the

award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6

(S.D.N.Y. Aug. 6, 2010)).  In wage and hour cases, Class Counsel is often called upon to

perform work after the final approval hearing, including answering class member questions,

answering questions from the claims administrator, and negotiating and sometimes litigating

disagreements with defendants about administering the settlement and distributing the fund.

The fact that Class Counsel's fee award will not only compensate them for time and effort

already expended, but for time that they will be required to spend administering the

settlement going forward, also supports their fee request. *See Reyes*, 2011 WL 4599822, at

*8.

49.     The Court finds reasonable Service Awards in the following amounts:

$10,000 to Nancy Martignago, $8,500 to Cindy Sellers, $7,500 to Amy Ferguson, $7,500 to June

Parman-Flax, $7,500 to Robin Grandusky and $7,500 to Caterina Derkasch.  The Court also

finds reasonable Service Awards in the amount of $2,500 to each of the eight original Consent

Plaintiffs: Alma Alcoser, Constance Robinson, Crystal Oswalt, Diana Martinez, Laurie Zimmer,

20

Maria Bridgeford, Tamara Spates, and William Possidento. All Service Awards shall be paid from the Settlement Fund.

50.     Service Awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Reyes*, 2011 4599822, at *9. It is important to compensate plaintiffs for the time they spend and the risks they take. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

51.     The "Effective Date" of the Settlement Agreement shall be the date this Order of Final Approval is entered on the docket. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

52.     Within seven (7) days of the Effective Date of final approval of the Settlement Agreement by the Court, Defendants will deposit money into an interest-bearing account through the Settlement Claims Administrator, in an amount not to exceed the Gross Fund Value, equal to the amount owed to pay (1) Rule 23 Class Members, (2) FLSA Class Members who submitted valid Opt-in Forms per the terms of the Settlement, (3) court-approved attorney's fees and expenses, Service Awards and Settlement Administration costs ("Settlement Amount"), and (4) $25,000 as a Settlement Reserve to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d). Fourteen (14) days after Defendants fund the Settlement Account, the Settlement Claims Administrator shall distribute the funds in the settlement account by making the following payments in the order below:

a.     Paying Class Counsel twenty-five percent of the Settlement Fund ($3,000,000) in attorneys' fees and litigation expenses;

21

Case 1:11-cv-03923-PGG   Document 89-1   Filed 10/02/13   Page 22 of 22

     b.      Paying Service Awards in the following amounts: $10,000 to Nancy Martignago, $8,500 to Cindy Sellers, $7,500 to Amy Ferguson, $7,500 to June Parman-Flax, $7,500 to Robin Grandusky and $7,500 to Caterina Derkasch and $2,500 each to Alma Alcoser, Constance Robinson, Crystal Oswalt, Diana Martinez, Laurie Zimmer, Maria Bridgeford, Tamara Spates, and William Possidento.

     c.      Paying the Settlement Claims Administration Costs to the Settlement Claims Administrator.

     d.      Paying the remainder of the Settlement Fund to class members in accordance with the allocation plan described in the Settlement Agreement.

53.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of Settlement Funds. The Court will retain jurisdiction over the case following the entry of the Judgment for Dismissal until thirty (30) days after the end of the Acceptance Period. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

54.     The Litigation shall be dismissed with prejudice after all the Settlement Funds have been distributed to Class Members.

*Plaintiffs' motions (Dkt. Nos. 82 and 84) are granted. The Clerk of Court is directed to terminate those motions and to close this case.*

It is so ORDERED this 3rd day of October, 2013.

_____
Honorable Paul G. Gardephe
United States District Court Judge